In the Matter of the Estate of ANNA OBSTARCZYK, Deceased. PHYLLIS LORRAINE HEMSTAD, Executrix under the Last Will and Testament of ANNA OBSTARCZYK, Plaintiff and Appellant, v. MARY AGNES MEHLHOFF, JOHN JOSEPH OBSTARCZYK, GENEVIEVE B. QUILTER, HELEN S. TOGNETTI, ANNA IRENE ANDERSON and FRANCIS LEO OBSTARCZYK, Petitioners for Removal of Executrix; and LOUIS A. OBSTARCZYK, and CAMILLE OBSTARCZYK, Interested Persons, Defendants and Respondents.

No. 10380

Submitted October 8, 1962. Decided January 8, 1963.

377 P.2d 532

Jardine, Stephenson, Blewett, Lewis & Weaver, Great Falls, Alex Blewett, Jr., (argued orally), Great Falls, for appellant.

Angland & Marra, Great Falls, Emmett C. Angland (argued orally), Joseph R. Marra (argued orally), Great Falls, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

In this cause Phyllis Lorraine Hemstad was the duly appointed executrix of the estate of her mother, Anna Obstarczyk, and during the course of administration a petition for her removal as such executrix was filed by respondents. Following a hearing an order was entered in the district court of Cascade County which revoked her letters testamentary. She appeals from the order.

The only issue presented for determination herein is whether the district judge abused his discretion in entering the order in question.

The facts pertinent to our inquiry are as follows:

The deceased, Anna Obstarczyk, was a matriarch of considerable business acumen, although she lacked formal education. The deceased having been possessed of some wealth,

made loans on occasion to several of the children; each loan being secured by a note.

It appears that loans were made to the appellant and her brother Louis Obstarczyk in the amount of $8,500. The loan was used in connection with the joint business enterprise operated by the two in the name of Trails End Trailer Park. On September 24, 1959, some four to five months before the death of Mrs. Obstarczyk, the outstanding balance had been reduced to $5,500. On that date, a check for $5,500 was drawn by the appellant on the account of the business, and presented to the deceased. The check was in full payment of the loan.

According to the testimony of Louis Obstarczyk, on the same date a check was drawn by the deceased in the amount of $5,000 payable to O & H Mobile Home Sales. This is claimed to be a gift to Louis Obstarczyk. O & H Mobile Home Sales is owned jointly by Louis Obstarczyk and Kenneth Hemstad, the husband of the appellant.

A check representing one interest payment at the rate of five percent was drawn on the firm account and paid to the deceased. Though this is suggestive of a loan, it is not by itself conclusive. Phyllis explains that the interest was to compensate her mother for the income she lost by reason of being unable to invest the sum given. The only other witness to the gift is Kenneth Hemstad, husband of the appellant, and he is able to draw checks on the business account.

O & H Mobile Home Sales has never given Louis a note for the money deposited with the firm, nor does the meager accounting system reflect the deposit as a capital investment by Louis. Moreover, the firm has never paid any interest thereon to Louis.

In February 1959, a check in the amount of $2,700 was drawn by the deceased payable to Kenneth Hemstad. On the face of the check was the notation "at 4½% interest". The appellant contends that the money was a gift to her three children and that Louis Obstarczyk was a witness to the

transaction. She testified on deposition that following the transfer of the money to Kenneth, her mother said: "Louis, when Kenneth is ready to pay this back you make certain the money is divided between the children, sometime or other I will give another $300 to make an even thousand for each one."

Louis testified on deposition: "I was in the kitchen when she come in for me, she called me into the room and told me 'Louie, you be sure the three Hemstad children get that money divided equally.'"

The husband of the appellant, made two interest payments on the sum. When the money was received it was deposited to the joint checking account used by Kenneth Hemstad and the appellant, where it has remained to this date. Mrs. Obstarczyk died before the additional $300 was transferred.

Respondents who are the other heirs were concerned about the size of the estate. At first it was thought that the $8,500 had not been repaid. However, a parish priest was called in to arbitrate the dispute, and the check in payment dated September 24, 1959, was presented as proof of payment.

During the preparation of the Form 3-A, a Final Report, used by the Board of Equalization in computing inheritance taxes, the appellant became concerned about reporting the gifts, and thus requested legal opinion from her counsel. Thereafter, both "gifts" were reported on Form 3-A. When the information on the form became known to the other heirs a family argument ensued.

As a consequence of the family dissention, the appellant filed a complaint seeking a declaratory judgment alleging therein that the payments were gifts, and calling for the other heirs to prove otherwise. That suit is still pending.

Following the filing of that complaint, the respondents moved the court to revoke the appellant's appointment as executrix on the grounds that her interests were adverse to

the estate. It is from the action of the district court in sustaining the motion that appellant appeals.

The will of the deceased, as well as other important papers was kept in a filing drawer in the small office shared by O & H Mobile Home Sales and Trails End Trailer Park. Among the papers was a note representing a loan made to another family member. The appellant had frequent occasion to use the office, and to use the other drawer in the two drawer filing cabinet.

Following the funeral, all of the heirs and their spouses returned to the family dwelling. Thereafter a phone call was made to the deceased's lawyer concerning whether the copy of the will kept in the trailer sales office could then be read by the family. They were informed that this was all right since it was merely a copy of the original.

There is conflicting testimony as to what followed. The appellant and Louis both testified that the appellant did not leave the family home. Four of the respondents testified that the appellant did leave the home. The implication contained in the testimony of the respondents is that the appellant knew of the location of the will and the fact that notes were kept there, and that she thus had an opportunity to destroy the notes evidencing the loans. No greater weight can be extended to the respondents' view since there were four testifying as against two. That question must be resolved by the judge in the declaratory judgment action. The testimony was important however to show that the appellant might have interests adverse to the estate, and no doubt was considered in that light by the district judge.

From the facts recited, it is obvious that in the case of at least one of the gifts, there was a question presented as to whether the gift had been perfected. We need not decide here whether there was sufficient delivery to have perfected the gift, or whether it was in fact a gift. We do decide that there is a question which needs judicial interpretation.

Prior to this time, the appellant had apparently decided the question favorably to herself. The duty of an executor is to examine strictly all claims against an estate and to look with a jaundiced eye at all gifts recently completed to see if they are gifts, and if they have been perfected, seeking judicial interpretation if necessary. Appellant did not seek judicial help until she feared for the gifts. It is clear that her own interests are antagonistic to the estate.

Appellant's claim that she is not personally interested in either fund is so patently wrong on the basis of the facts herein that we cannot agree.

Appellant cites our recent case, Estate of Tice, 140 Mont. 28, 367 P.2d 771. We find that case distinguishable on its facts, and in harmony with our holding here.

The administratrix in that case made a full disclosure of the alleged gift at the time an appraisal was made of the assets of the estate. Here, disclosure was not made until much later. More important is the fact that the district court in that case, hearing the evidence, did not feel that the administratrix should be removed. and we found that *under the facts of the Tice case,* there was not an abuse of discretion on the part of the district court. Here, the facts are not similar since the district court, hearing the evidence, did feel that the executrix should be removed.

In the Tice case, supra, we quoted with approval from In re Rinio's Estate, 93 Mont. 428, 19 P.2d 332, as follows:

" ' * * * The law does not look with favor upon the administration of estates by a person where conflicts in the performance of his duty are likely to arise.' "

Appellant also argues that even assuming an adverse interest that such is not grounds for removal under the statute.

Section 91-2101, R.C.M. 1947, deals with the removal and suspension of the executor. It provides as follows:

"Whenever the judge of a district court has reason to believe, from his own knowledge, or from credible information,

that any executor or administrator has wasted, embezzled, or mismanaged, or is about to waste or embezzle, the property of the estate committed to his charge, or has committed, or is about to commit, a fraud upon the estate, or is incompetent to act, or has permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any act as such executor or administrator, he must, by an order entered upon the minutes of the court, suspend the powers of such executor or administrator until the matter is investigated.''

Appellant is correct that no proof of waste, mismanagement, embezzlement, fraud, incompetency, or neglect has been affirmatively shown. On the other hand, such proof depends upon the outcome of the declaratory judgment action. There may actually be none of the charges present, but there were sufficient facts to arouse a suspicion.

In a recent opinion, In re Estate of Stewart, 139 Mont. 295, 363 P.2d 161, this court said:

''An executor or administrator occupies a position of trust in the handling of an estate, (In re Stewart's Estate, 145 Or. 460, 28 P.2d 642, 91 A.L.R. 818; In re Johnson's Estate, 187 Wash. 552, 60 P.2d 271, 106 A.L.R. 217. See Montgomery v. Gilbert, 111 Mont. 250, 108 P.2d 616), and it is the duty of the court to appoint fully competent and trustworthy executors and administrators. Ordinarily the existence of a claim or claims against an estate does not per se disqualify an executor or administrator from serving as such and this is true regardless of the amount thereof. It is the nature of the claim or claims which must be considered and when it appears that a prospective executor or administrator is in a position so antagonistic to the interests of the estate that he cannot do justice to the estate he should not be appointed. In re Dolenty's Estate, 53 Mont. 33, 161 P. 524. Also see In re Adkins' Estate, 133 Mont. 27, 319 P.2d 512.''

It is obvious from a reading of section 91-2101, that

the rule announced in Estate of Stewart, supra, can apply no less to the executor in office than it does to the person seeking to obtain the appointment.

The appellant has suggested that since the estate is ready for closing, except for the disputed gifts, that there is no need to deplete the estate with additional administrative costs. We feel certain that the district court in appointing a disinterested administrator to close the estate will fairly consider both the work performed by the appellant and that done by the new appointee in allowing disbursement of administrative fees.

Finding no abuse of discretion on the part of the district court, the order appealed from is affirmed and the matter remanded to the district court for further proceedings in conformity with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES ADAIR, CASTLES, and THE HONORABLE GUY C. DERRY, District Judge, sitting in place of MR. JUSTICE DOYLE, concur.