**Harold SCHOFIELD, and Atlantek, Inc., Plaintiffs,**

**v.**

**John FRENCH, alias, Barcode Systems, Inc. and DataCard Corporation.**

**No. Civ.A. 95-103L.**

United States District Court,
D. Rhode Island.

Feb. 9, 1999.

Dennis R. Gannon, Warwick, RI, for plaintiffs.

Richard W. MacAdams, MacAdams & Wieck, Inc., Providence, RI, for Datacard.

William A. Jacobson, Kaplan & Jacobson, Providence, RI, and Scott E. Shutzman, Santa Ana, CA, for French & Barcode.

*DECISION AND ORDER*

LAGUEUX, Chief Judge.

Atlantek, Inc. and its principal Harold Schofield (collectively "Atlantek") filed this action against DataCard Corporation ("DataCard") and against Barcode Systems, Inc. and its principal John French (collectively "BSI" or "BCS").[1] The Complaint asks for a declaratory judgment, specifically seeking a resolution of a dispute about technology developed and patents secured by the parties. DataCard has positioned itself identically to Atlantek although they are nominally opponents in this action. French and BSI asserted nine affirmative defenses and filed a series of counterclaims against Atlantek and crossclaims against DataCard.

The matter is now before this Court on Atlantek's and DataCard's motions for summary judgment.

Although this case concerns patents, it is not to be decided by reference to patent law. In their motions, both Atlantek and Data-

1. The original complaint included three additional plaintiffs who were dropped from this matter pursuant to an Order of this Court dated August 6, 1997.

Card argue that even if French and BSI had rights to the technology at issue, they contracted those away in 1988. BSI has offered up a barrage of defenses, but that 1988 contract between Atlantek and BSI remains at the core of the case. The parties dispute whether certain attachments were actually affixed to the contract when French signed it. BSI argues that the issue creates a material dispute that defeats summary judgment.

As discussed below, that is not true. Under Rhode Island law, there are no material facts in dispute, and therefore, this Court can rule on the case as a matter of law. Atlantek's and DataCard's motions for summary judgment are granted. The movants also prevail on BSI's counterclaims and cross-claims.

I. *Facts and Procedural Stance*

DataCard, a Minnesota corporation, is a private manufacturer of the machinery that creates credit, identification and other plastic cards. In the mid-1980s, a DataCard executive recognized the possibility of thermal printing, a then-new technology that would allow the company to print color onto plastic cards. To explore the concept, DataCard hired Atlantek, a Rhode Island corporation run by Harold Schofield to design machinery that would incorporate thermal printing.

Machines of this type include two elements—the electronics component and the mechanical system. Atlantek had expertise with the electronics, and it subcontracted the mechanical portion to Barcode Systems Inc., a California corporation, and its principal John French. The companies were trying to develop machinery that would print color images on two-inch-wide webs of plastic ("the Datacard project").

The three companies worked together from 1986 into 1988 in a customer-contractor-subcontractor relationship. DataCard contracted with Atlantek through two documents, the 1986 Consulting Agreement and the 1987 Consulting Agreement. Those two companies explicitly agreed that DataCard would own all intellectual property created during those efforts. The language in each Consulting Agreement is identical:

> Consultant agrees that the data, concepts, technology and information it receives from Data Card or which it creates through its efforts for Data Card under this Agreement shall be and remain the property of Data Card.

(1986 Consulting Agreement at 2, § 5; 1987 Consulting Agreement at 2, § 5.) In turn, Atlantek subcontracted with BSI by issuing two purchase orders, P.O. # 302 and P.O. # 328.

In 1988, Atlantek began a project to adapt the technology to other industries, specifically to design machinery or Imperial Chemical Industries[2] ("the ICI project") that could print color images on larger webs of plastic.[3] DataCard permitted Atlantek to use the intellectual property from the earlier projects, and Atlantek contracted again with BSI for the mechanical portion of the design. That contract was embodied in Project Development Agreement # 446 ("PDA # 446") and signed by French and Schofield.

PDA # 446 provided that it would be governed by the law of Rhode Island. It included a paragraph that referred to the 1986 and 1987 Consulting Agreements that had assigned all intellectual property created during the DataCard project to DataCard:

> BCS acknowledges, and agrees to abide by, all prior ATLANTEK consulting agreements with DATA CARD CORPORATION identified as exhibits A and B concerning the basic slide mechanism concept which is fundamental to the work performed under this agreement.

(PDA # 446 at § 5, ¶ 3.) At this point, the parties differ on the facts. French avows that the Consulting Agreements were not attached as exhibits. DataCard and Atlantek dispute that claim, but for purposes of ruling on their motion for summary judgment, this

2. The parties differ on whether this company was named Imperial Chemical Industries or Imperial Chemical, Inc.

3. The exact dimensions of this machine are immaterial but unclear. In its filings, DataCard refers to this as an eight-inch version, but the purchase order associated with PDA # 446 appears to refer to four-inch webs of plastic.

Court assumes that the Consulting Agreements were not attached.

BSI never completed the ICI project for Atlantek, and the relationship between BSI and the other parties soured. In 1990, DataCard filed two patent applications related to the work done under the Consulting Agreements. Atlantek and its employees cooperated with DataCard. French did not, but DataCard proceeded under the patent regulations that address non-cooperative inventors. Patent # 5,281,038 (" '038 Patent") was issued on January 25, 1994, and French is listed as a co-inventor of the '038 Patent. Patent # 5,080,512 (" '512 Patent") was issued on January 14, 1992, and French was *not* listed as an inventor. Atlantek and its employees assigned their ownership interests in the '038 Patent and the '512 Patent to DataCard.

This case is about BSI's and French's interest in those patents. French refused to execute a form of assignment, and he has alleged that he retains proprietary interest in the patents. Furthermore, French and BSI make similar allegations with respect to two other patents presently owned by DataCard, namely Patent # 5,239,926 (" '926 Patent") and Patent # 5,037,216 (" '216 Patent"). DataCard does not agree.

Both parties agree, however, that all of the intellectual property at issue was created during the Datacard project. Specifically, they agree that French's claims are based on work that he did for Atlantek under the 1986 and 1987 Consulting Agreements and P.O. # 302 and P.O. # 328. (*See* John French and Barcode Systems Inc.'s Statement of Disputed and Undisputed Material Facts at ¶ 32.)

Atlantek filed this action for declaratory relief in 1995. After Atlantek filed its First Amended Complaint, DataCard filed cross-claims against French and BSI seeking similar relief. Although Atlantek is nominally a plaintiff and DataCard is nominally a defendant, their interests in this action are now aligned. Both movants ask this Court to settle the dispute over the technology and the patents—including who owns them, who should have been listed as inventors and whether any party has infringed on any other party's rights.

In its answer, French and BSI asserted nine affirmative defenses. They also filed counterclaims against Atlantek and cross-claims against DataCard, including claims for:

- breach of covenant of good faith and fair dealing ("First Counterclaim")
- breach of fiduciary duty ("Second Counterclaim")
- constructive fraud ("Third Counterclaim")
- imposition of constructive trust ("Fourth Counterclaim")
- negligence ("Fifth Counterclaim")
- common law fraud and deceit ("Sixth Counterclaim")
- negligent misrepresentation ("Seventh Counterclaim")
- conversion and misappropriation ("Eighth Counterclaim and First Crossclaim")
- misappropriation of trade secrets ("Ninth Counterclaim and Second Crossclaim")
- unfair business practices under a California statute ("Tenth Counterclaim and Third Crossclaim")
- unfair competition under the Lanham Act ("Eleventh Counterclaim and Fourth Crossclaim")
- a plea for declaratory relief ("Twelfth Counterclaim and Fifth Crossclaim")

II. *Legal Standard for Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under

the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir.1995). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

### III. *Atlantek's Claims and DataCard's Crossclaims*

The patent issues in this case may have created novel problems if this case went to trial, but this decision turns on a comparatively pedestrian contract issue. Both DataCard and Atlantek argue in their motions for summary judgment that French and BSI signed a contract, namely PDA # 446, that bound them to deliver to DataCard the intellectual property that became the patents at issue. French responds that the 1986 and 1987 Consulting Agreements were not attached to PDA # 446 when he signed it. French argues that said fact means that he cannot be required to accept the terms of the Consulting Agreements and, in addition, PDA # 446 is void because of fraud.

In the end, this case is even clearer than DataCard and Atlantek believe because all the parties overlooked a recent Rhode Island Supreme Court case that supports movants.

#### A. *Rhode Island Contract Law*

The Rhode Island Supreme Court has ruled that instruments referred to in a written contract may be regarded as incorporated by reference. *See Rotelli v. Catanzaro,* 686 A.2d 91, 94 (R.I.1996). In *Rotelli,* the Rhode Island Supreme Court cited to American Jurisprudence. That source confirms this Court's reading of *Rotelli,* and in addition, it includes an "observation" in a footnote that:

> It is not essential to such incorporation that the separate writings be attached or annexed to the contract of which they become a part.

17A Am.Jur.2d § 400 ("observation" after n. 40) (1991). The *Rotelli* case turned on a pair of documents signed by two partners, a disbursement agreement and a promissory note. In that case, the documents were executed on the same day and therefore were even more related, but both the Supreme Court and American Jurisprudence are clear that a document may be incorporated into a written contract merely by reference.

This reading does not contradict the prior case cited by French in which the Rhode Island Supreme Court held that:

> a person is not bound by the terms of a written agreement if he had no knowledge of its terms because the manner in which they are embodied in the instrument would not lead a reasonable person to suspect that the terms are part of the contract.

*Drans v. Providence College,* 119 R.I. 845, 853, 383 A.2d 1033, 1037–38 (R.I.1978). (This writer was the trial judge in that case.) Drans was a tenured professor contesting Providence College's mandatory retirement policy, which had been promulgated after he received tenure. *See id.* at 851–52, 383 A.2d at 1037. Drans signed an April 1970 contract that established his position, status and salary for the upcoming academic year, but it did not provide on the face that, by signing, Drans embraced the college's retirement policy. *See id.* at 852, 383 A.2d at 1037. Nor did the contract expressly incorporate the provisions of the Faculty Manual, *see id.,* so the Supreme Court concluded that Drans could not reasonably have suspected that Providence College intended to incorporate the retirement policy outlined there into his contract.

Reading *Rotelli* with *Drans,* this Court concludes that, under Rhode Island law, documents may be incorporated into a written contract merely by reference. Explicit reference in the contract to a document puts reasonable people on notice that they should read it and know the terms.

B. *Applied to this Case*

BSI and Atlantek dealt with each other for years in a relationship broader than the single agreement that became PDA # 446. French thought he and Schofield were working as teammates to sell color printers. They named the enterprise Applied Graphics, and at various points, French characterized himself and Schofield as partners or as in a joint venture. However, even French noted in a September 1987 letter to Schofield and another business associate that "I do believe that we entered into an agreement that was conclusive in nature, albiet it was a gentlemen's agreement." (Letter from French to Schofield and Thatcher of 9/7/87, at 1 (attached as Exhibit I to Aff. of John French in Supp. of Opp'n to Datacard's Mot. For Summ.J.).)

This Court cannot enforce a gentlemen's agreement. Gentlemen—like their counterparts, gambling men—must settle their own accounts. This Court enforces legal contracts, and it enforces them under standard rules so that all parties know, as best they can ever know, the significance of what they are signing. That is why PDA # 446 is such a crucial document. French claims now that PDA # 446 does not encapsulate the long-term relationship that he thought he was building with Schofield. He says that he would not have signed it if he understood its terms. However, French cries now over spilled ink. He signed a contract, and that contract—PDA # 446—settles the dispute.

1. *PDA # 446 incorporated the Consulting Agreements*

This case is distinguishable from *Drans* because PDA # 446 explicitly mentions Atlantek's Consulting Agreements with Data-Card:

> BCS acknowledges, and agrees to abide by, all prior ATLANTEK consulting agreements with DATA CARD CORPORATION identified as exhibits A and B concerning the basic slide mechanism concept which is fundamental to the work performed under this agreement.

(PDA # 446 at § 5, ¶ 3.) Taking the facts in the best light for French, this Court assumes that the 1986 and 1987 Consulting Agreements were not attached to PDA # 446 when French signed the contract. However, by law the Consulting Agreements were incorporated, and a reasonable person would certainly have suspected that he was agreeing to abide by them. In fact, a reasonable person would *know without a doubt* that he was agreeing to abide by the Consulting Agreements, and if French signed the contract without examining the incorporated documents, then he did so at his own risk. Only two such agreements existed, so French could have identified them easily and sought them from Atlantek before signing if they were not attached.

The Consulting Agreements explicitly gave Datacard the right to all intellectual property created under them. (*See* 1986 Consulting Agreement at 2, § 5; 1987 Consulting Agreement at 2, § 5.) French and BSI have agreed that the patents involved in this case arose from work performed under the purchase orders that accompanied the Consulting Agreements. (*See* John French and Barcode Systems Inc.'s Statement of Disputed and Undisputed Material Facts at ¶ 32.) Therefore, French and BSI have contracted away their right to the patents and the underlying intellectual property at issue in this case.

2. *PDA # 446 is internally consistent*

French's counsel appeared to argue that PDA # 446 becomes contradictory if it incorporates the Consulting Agreements. In oral arguments, counsel argued that one paragraph gave the intellectual property rights to French while another took them away.

However, a reading of the paragraphs does not support that contention. The first operative paragraph is PDA # 446, § 5, ¶ 2:

> BCS agrees that the data, concepts, technology and information which it creates specifically through its efforts for ATLAN-

> TEK under this agreement may be freely utilized by ATLANTEK. ATLANTEK agrees that the data, concepts, technology and information which BCS creates specifically through its efforts for ATLANTEK under this agreement may be freely utilized by BCS except for the purpose of developing a color thermal imaging tester.

(PDA # 446 at § 5, ¶ 2.) That paragraph gives French and BSI equal rights to alienate any intellectual property created in the future on the ICI project. The next paragraph, which incorporates the Consulting Agreements and is quoted above, affects only the intellectual property created in the past under the DataCard project. (*See* PDA # 446 at § 5, ¶ 3.) The paragraphs are complementary, and there is no conflict or ambiguity in their terms.

Therefore, this Court concludes that French is bound by the terms of PDA # 446 and the Consultant Agreements, including the provision that all intellectual property created under the agreements would be the property of DataCard.

IV. *BSI's Affirmative Defenses*

BSI raised nine affirmative defenses. None will shield it from summary judgment. Although this Court will address each defense individually, it notes at the start that BSI has shown no fraud or misdeed by Atlantek or DataCard. Several defenses fail as a matter of law and others fail because BSI has provided no evidence that could support them. BSI's greatest difficulty is that it has offered little or no evidence to support some of its most outrageous assertions.

In the initial stages of litigation, this Court found that venue was proper in Rhode Island, so it now disregards the improper venue defense ("First Affirmative Defense").

BSI has provided no evidence of waivers by either Atlantek or DataCard. Therefore, this Court ignores the waiver defense ("Second Affirmative Defense").

BSI has provided no evidence of fraud or misrepresentation other than a claim that Atlantek did not attach the Consulting Agreements to PDA # 446. This Court has already concluded in this decision that not attaching those documents would not be fraud because PDA # 446 incorporated them by reference. Therefore, this Court disregards the misrepresentation about patent rights defense ("Third Affirmative Defense") and the fraud defense ("Fifth Affirmative Defense").

This Court decided herein that BSI contracted away its rights to the intellectual property at issue in this case and that DataCard properly prosecuted the four patents. (*See* Section III.) Therefore, even if French were to demonstrate that he contributed to the '512 patent, that could not be a defense in this action. Because DataCard owns that intellectual property and that patent and because BSI has offered no other evidence of misrepresentation, this Court rejects the misrepresentation in the patent application defense ("Fourth Affirmative Defense"), the unclean hands/fraudulent acquisition of patents defense ("Seventh Affirmative Defense"), and the invalidity of the patents defense ("Eighth Affirmative Defense").

BSI has provided no evidence of negligence, and French said repeatedly in his deposition that he believed all acts alleged and complained of against Atlantek were intentional, not negligent. (*See* Deposition of French, Tr. at 1769–72.) There is no evidence of negligence. Therefore, this Court ignores the negligent concealment of facts defense ("Sixth Affirmative Defense").

Because this Court does not reach the "engaged to invent" doctrine in the movants' claims, it need not reach the defense that BSI was not engaged to invent ("Ninth Affirmative Defense"). That defense is totally irrelevant to the outcome of the case.

V. *BSI's Counterclaims and Crossclaims*

BSI alleged twelve counterclaims and five crossclaims against the other parties. It did not, however, pursue those charges with sufficient energy to survive these motions for summary judgment. BSI's pleadings do not defend the claims in the methodical manner that Atlantek and DataCard contested them, and on several claims, BSI has not provided any evidence to support them. Between the lack of evidence and this Court's ruling in

Section III, all the counterclaims and crossclaims are inadequate as a matter of law.

For the sake of clarity, this Court analyzes BSI's counterclaims and crossclaims simultaneously. Atlantek and DataCard have aligned interests, and there is no reason that requires separating them

A. *First Counterclaim*

BSI claims a breach of covenant of good faith and fair dealing by Atlantek and Schofield. This Court has ruled that French and BSI has no right to the patents and that DataCard properly prosecuted them. (*See* Section III.) BSI has presented no evidence of other fraud, except a mere allegation that French's name should have been included on several of the applications. Even if that were true, there could be no resulting damage to French or BSI because French and BSI contracted away their rights to alienate and control the patents. Therefore, summary judgment is appropriate and is granted as to the First Counterclaim.

B. *Second Counterclaim*

BSI claims a breach of fiduciary duty by Atlantek. However, the parties dealt with each other as arms-length negotiators, and there is no evidence that Atlantek or Schofield owed any fiduciary duty to French or BSI. French and Schofield did discuss creating a joint enterprise that they dubbed Applied Graphics. However, that entity was not involved in any of these deals, which were contracts between BSI and Atlantek.

Atlantek and Schofield had no fiduciary duty to BSI or French. Therefore, summary judgment is appropriate and is granted as to the Second Counterclaim.

C. *Third Counterclaim*

BSI claims that Atlantek committed constructive fraud against BSI in that French would never have signed PDA # 446 had he been shown the Consulting Agreements. (*See* Mem. In Supp. of John French and Barcode Systems Inc.'s Obj. to Datacard Corp's Mot. For Summ.J. at 6.) This Court has found that PDA # 446 incorporated the Consulting Agreements by reference.

There was no legal duty to attach the documents. Therefore, there could be no fraud even if the documents were not attached, and summary judgment is appropriate and is granted as to the Third Counterclaim.

D. *Fourth Counterclaim*

BSI asks that a constructive trust be imposed on Atlantek and Schofield based on the previous claims because they were fiduciaries and trustees of BSI. Because this Court has already found that Atlantek and Schofield were not fiduciaries and grants summary judgment on the Second and Third Counterclaims, it grants summary judgment on the Fourth Counterclaim.

E. *Fifth Counterclaim*

BSI alleges that Atlantek and Schofield were guilty of negligence. However, French said repeatedly in his deposition that he believed all acts alleged and complained of against Atlantek were intentional, not negligent. (*See* Deposition of French, Tr. at 1769–72.) There is no evidence of negligence. Therefore, summary judgment is appropriate and granted as to the Fifth Counterclaim.

F. *Sixth Counterclaim*

BSI alleges common law fraud and deceit against Atlantek and Schofield. This Court has ruled that French and BSI had no right to the intellectual property created in connection with the DataCard project and that DataCard properly prosecuted the patents. (*See* Section III.) BSI has presented no evidence of other fraud, except a mere allegation that French's name should have been included on several of the patents. Even if that were true, there could be no damage to French or BSI because French and BSI contracted away their rights to alienate and control the patents. Therefore, summary judgment is appropriate and is granted as to the Sixth Counterclaim.

G. *Seventh Counterclaim*

BSI alleges negligent misrepresentation against Atlantek and Schofield. However,

French said repeatedly in his deposition that he believed all acts alleged and complained of against Atlantek were intentional, not negligent. (*See* Deposition of French, Tr. at 1769–72.) There is no evidence of negligence. Therefore, summary judgment is appropriate and granted as to the Seventh Counterclaim.

H. *Eighth Counterclaim and First Crossclaim*

BSI alleges claims of conversion and misrepresentation against Atlantek, Schofield and DataCard. This Court has already found that French and BSI had no property right in the intellectual property created in connection with the DataCard projects. (*See* Section III.) Therefore, BSI cannot prove the elements of conversion, and summary judgment is granted as to the Eighth Counterclaim and the First Crossclaim.

I. *Ninth Counterclaim and Second Crossclaim*

BSI alleges claims of misappropriation of trade secrets against Atlantek, Schofield and DataCard. This Court has already found that French and BSI had no right to the intellectual property created in connection with the DataCard projects. (*See* Section III.) BSI had no trade secrets as to the imprinting of a photograph onto a credit card for Atlantek or DataCard to misappropriate. Therefore, summary judgment is appropriate and is granted as to the Ninth Counterclaim and the Second Crossclaim.

J. *Tenth Counterclaim and Third Crossclaim*

French and BSI assert a statutory claim of unfair competition against Atlantek, Schofield and DataCard pursuant to § 17200 of the California Business and Professions Code. However, PDA # 446 included a clause that selected Rhode Island law to govern the agreement.

Under the laws of Rhode Island, a choice of law provision in a contract is enforceable where the transaction bears a reasonable relationship both to Rhode Island and another state:

> [W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights or duties.

R.I.Gen.Laws § 6A–1–105. *See also Providence & Worcester RR. Co. v. Sargent & Greenleaf, Inc.*, 802 F.Supp. 680, 687 (D.R.I. 1992). In this case, there is a reasonable relationship between the ICI project and the states of Rhode Island and California. Rhode Island is Atlantek's principal place of business. Although BSI would have created the machinery in California, it would have delivered design concepts and working models to Atlantek in this area.

PDA # 446 designated Rhode Island law to govern the agreement. Therefore, a California statute does not apply to disputes that arise from the contract. Summary judgment is appropriate and is granted as to the Tenth Counterclaim and the Third Crossclaim.

K. *Eleventh Counterclaim and Fourth Crossclaim*

BSI alleges a violation of the Lanham Act. BSI has presented no evidence of such a violation, and this Court has ruled that French and BSI had no right to the intellectual property created in connection with the DataCard projects. (*See* Section III.) Therefore, summary judgment is appropriate and is granted as to the Eleventh Counterclaim and the Fourth Crossclaim.

L. *Twelfth Counterclaim and Fifth Crossclaim*

BSI requested declaratory relief. Because this Court has ruled against all eleven substantive claims, it cannot grant declaratory judgment to BSI. Summary judgment is appropriate and is granted as to the Twelfth Counterclaim and Fifth Crossclaim.

## CONCLUSION

For the preceding reasons, Atlantek's and DataCard's motions for summary judgment are granted. The movants have prevailed both as to their claims against BSI and

French and as to all counterclaims and crossclaims.

The Court declares that DataCard is the rightful owner of the intellectual property created during the DataCard projects, including the '038 Patent, the '512 Patent, the '926 Patent and the '216 Patent. Atlantek and DataCard committed none of the negligent or intentional misdeeds alleged by BSI. The Clerk shall enter judgment for plaintiffs, Harold Schofield and Atlantek, Inc., on the Complaint and for cross claimant Datacard Corporation on its crossclaim against John French and Barcode Systems, Inc. The Clerk shall also enter judgment for Schofield and Atlantek, Inc. on the twelve counterclaims asserted by French and Barcode Systems, Inc. against them, and for Datacard Corporation on the five crossclaims asserted by French and Barcode Systems, Inc. against it.

It is so Ordered.