No. 00-745

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 153

IN RE THE ESTATE OF

CHARLES KURALT.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Keith Strong, John Kützman, Dorsey & Whitney, LLP, Great Falls, Montana

For Respondents:

James H. Goetz, Goetz, Gallik, Baldwin & Dolan, Bozeman, Montana

_____

Submitted on Briefs: February 23, 2001

Decided: August 9, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

1. ¶Susan Bowers and Lisa Bowers White ("Bowers and White") appeal from the Order Denying Petition for Appointment of Successor Co-Personal Representatives issued by the Fifth Judicial District Court, Madison County. The Appellants raise one issue: whether the District Court erred when it denied their petition for appointment. We reverse and remand for proceedings consistent with this opinion.

## BACKGROUND

1. ¶On July 4, 1997, Charles Kuralt died in a hospital in New York City. His widow, Suzanna "Petie" Baird Kuralt, thereafter filed a petition in the state courts of New York seeking to probate his estate. On September 15, 1997, Petie, as the Domiciliary Foreign Personal Representative of the Estate of Charles Kuralt, secured Montana counsel and filed a Proof of Authority seeking to probate certain real and personal property owned by Kuralt in Madison County, Montana.

2. ¶On September 30, 1997, Patricia Elizabeth Shannon, an intimate companion of Kuralt for nearly thirty years, filed a Petition for Ancillary Probate of Will. This petition challenged the application of Kuralt's New York will to the real and personal property in Madison County. In part, the basis for Shannon's petition was a letter, dated June 18, 1997, which she had received from Mr. Kuralt shortly before his death indicating that he intended that Shannon "inherit" 90 acres of real property along the Big Hole River. Shannon claimed that the letter constituted a valid holographic will that entitled her to Kuralt's real property in Madison County and, therefore, that the property should not be allowed to pass under the antecedent terms of Kuralt's New York will.

3. ¶The District Court granted partial summary judgment in favor of the Estate on May 26, 1998. This Court, in *In re Estate of Kuralt*, 1999 MT 111, 294 Mont. 354, 981 P.2d 771 ("*Kuralt I*"), reversed the District Court and remanded the case for trial in order to resolve disputed issues of material fact. Following an abbreviated evidentiary hearing on remand, the District Court held that the June 18, 1997, letter was a valid holographic codicil to Kuralt's formal will and entered judgement in favor of Shannon. The Estate appealed and on December 27, 2000, we affirmed. *In re Estate of Kuralt*, 2000 MT 359, 15 P.3d 931, 57 St. Rep. 1529 ("*Kuralt II*").

4. ¶The critical events that give rise to the current appeal occurred prior to our issuance of *Kuralt II*. They are as follows: Petie, the personal representative of the Estate in both New York and Montana, died in October 1999. On February 22, 2000, the Estate filed a Bench Memorandum Regarding Termination of Appointment of Domiciliary Foreign Personal Representative informing the court of Petie's death and the corresponding termination of her personal representation of the Estate. It stated that the Estate had been completely administered and closed, that the contested Montana property had been distributed to Petie, and, therefore, no successor personal administrator of the Estate was necessary. The Estate claimed that, pursuant to § 72-3-522(2), MCA, Charles and Petie's two daughters, Bowers and White, as personal representatives of Petie's estate to which the Montana property had been distributed, would protect any relevant assets. The Estate suggested that if a successor personal representative was necessary for the prosecution of Shannon's claims, the District Court could appoint a successor personal representative, special administrator, or, alternatively, substitute the Petie Kuralt estate as the real party in interest.

5. ¶On March 31, 2000, Shannon filed a petition for appointment as successor personal representative or, alternatively, for appointment of a special administrator. In response, the Estate requested that the court stay consideration of Shannon's petition

pending the Estate's appeal in *Kuralt II*. The Estate requested that, if the District Court denied its request for a stay, the court grant Bowers and White a reasonable time within which to submit a petition seeking appointment of either themselves or a nominee as the personal representative of the Estate.

6. ¶On July 13, 2000, the District Court denied Shannon's request that she be appointed successor personal representative because the court determined that she was an active litigant in claims clouding the Estate. Instead, the court appointed R. Neil Kent as special administrator of the Estate.

7. ¶Bowers and White were appointed as successor personal representatives of the Kuralt Estate in New York on July 21, 2000. On August 21, 2000, Bowers and White petitioned the court to terminate the appointment of the special administrator and to appoint them successor personal representatives of the Estate in Montana. They contended that, pursuant to their appointment in New York, they had absolute priority for appointment in Montana as well as the coincident right to remove the special administrator. Shannon resisted Bowers and White's petition, arguing that they had renounced their right to appointment. Alternatively, Shannon stated that she would withdraw her resistance to Bowers and White's request for appointment if they would file a satisfactory bond.

8. ¶On September 20, 2000, the District Court denied Bowers and White's request for appointment. The court determined that Bowers and White had informally renounced their right to serve as successor personal representatives of the Kuralt Estate in Montana and that there was a significant conflict between Bowers and White and Shannon. Bowers and White appeal.

## STANDARD OF REVIEW

1. ¶The parties dispute the appropriate standard of review that this Court should employ. Citing *Estate of Goick* (1996), 275 Mont. 13, 22, 909 P.2d 1165, 1170, Bowers and White contend that we review a district court order with respect to the appointment of a personal representative to determine whether the court has correctly interpreted the law. Shannon contends, however, that the question presented in the instant case does not involve the initial appointment of a personal representative, but rather the replacement of a special administrator appointed by a probate court. Citing *In re Estate of Haagenson* (1997), 286 Mont. 34, 37, 952 P.2d 1385, 1387, Shannon maintains that the standard of review of a district court's decision regarding the removal of a personal representative is whether the district court abused its discretion.

2. ¶Neither party is correct. As is often the case, the answer lies somewhere between the two positions advocated by the parties. The questions raised by Bowers and White's appeal actually involve multiple standards of review. First, whether Bowers and White have statutory priority for appointment as personal representatives of the Estate in Montana as a result of their appointment as personal representatives of the Estate in New York, as well as a coincident right to obtain removal of the special administrator, is a legal question which we review to determine whether the court correctly interpreted the law. *See In re Estate of Peterson* (1994), 265 Mont. 104, 110, 874 P.2d 1230, 1233. The District Court's determination that Bowers and White renounced their right to appointment involved the interpretation and application of the statute governing renunciation. Questions of statutory interpretation and application are reviewed for correctness. *See, e.g., In re A.W.*, 1999 MT 42, ¶ 6, 293 Mont. 358, ¶ 6, 975 P.2d 1250, ¶ 6. Lastly, with regard to whether Bowers and White have a conflict with Shannon which prevents them from being appointed personal administrators, we review a district court's refusal to appoint a personal administrator to determine whether the court abused its discretion. *Cf. Estate of Peterson*, 265 Mont. at 108, 874 P.2d at 1232 (affirming removal of personal administrator because of a conflict of interest under abuse of discretion standard); *In re Estate of Obstarczyk* (1963), 141 Mont. 346, 352-53, 377 P.2d 531, 534-35 (same).

## DISCUSSION

1. ¶Did the District Court err when it denied Bowers and White's petition to be appointed successor personal representatives of the Estate in Montana?

2. ¶Bowers and White contend that they are entitled to appointment as successor ancillary personal representatives because they have been appointed domiciliary personal representatives of the Estate in New York. Shannon responds that Bowers and White are barred by the doctrine of *res judicata* from relitigating the issue of whether they are entitled to appointment as they could have raised that issue when Shannon moved for appointment as personal representative. Shannon, however, failed to raise the defense of *res judicata* to Bowers and White's petition for appointment below. We decline to address the merits of this argument for the first time on appeal. *See Moore v. Imperial Hotels Corp.,* 1998 MT 248, ¶ 19, 291 Mont. 164, ¶ 19, 967 P.2d 382, ¶ 19.

3. ¶Bowers and White are correct in maintaining that they have priority for appointment as well as the coincident right to obtain removal of the special

administrator. As domiciliary personal representatives, Bowers and White have "priority over all other persons." Section 72-3-506, MCA. Incident to securing appointment as ancillary personal representative, Bowers and White "may obtain removal of another who was appointed personal representative in this state to administer local assets." Section 72-3-526(3), MCA.

4. ¶However, Bowers and White's statutory priority for appointment does not end the matter. Any person entitled to appointment may renounce that right by appropriate writing filed with the court. Section 72-3-504(2), MCA. The District Court denied Bowers and White's petition for appointment, in part, because it determined that Bowers and White had "informally" renounced their statutory priority on February 22, 2000, and March 21, 2000, by indicating through local counsel that they did not intend to seek appointment.

5. ¶The District Court 's determination that Bowers and White renounced their priority for appointment is incorrect. The essence of the Estate's February 22, 2000, Bench Memorandum was that the Kuralt Estate no longer needed a personal representative because it had been completely administered and closed. The Estate observed that the Montana property which was the subject of the instant dispute had already been distributed to Petie Kuralt. Accordingly, the Estate suggested that the court substitute Petie's estate as the real party in interest and observed that Bowers and White were the personal representatives of this estate. The Estate also contended that Shannon had the burden of proving that a successor personal representative was necessary. Shannon subsequently filed a petition seeking appointment as personal representative of the Estate. In a brief filed on April 26, 2000, in response to Shannon's petition for appointment, the Estate informed the court that, if it determined that a personal representative was necessary, Bowers and White had statutory priority for appointment and would pursue it. From the forgoing, we cannot conclude that Bowers and White renounced their priority for appointment.

6. ¶However, even though Bowers and White did not renounce their statutory priority, priority for appointment is not an absolute right. "A district court can remove a personal representative or refuse to appoint a person as personal representative for cause if there is a conflict between that person's interests and those of the estate." *Estate of Peterson*, 265 Mont. at 108, 874 P.2d at 1232. The District Court also denied Bowers and White's petition for appointment as successor personal representatives of the Kuralt Estate because it determined that "a significant conflict now exists between Patricia Shannon and [Bowers and White]."

7. ¶Bowers and White maintain that the only relevant conflict of interest which could prevent their appointment as personal representatives would be a conflict of interest

with the Estate. Any conflict of interest they have with Shannon is not relevant to their suitability as personal representatives. Bowers and White insist that by resisting Shannon's claims they would be fulfilling their duty to strictly examine all claims against the Estate. Shannon responds that "the argument that [a] conflict needs to be with 'the Estate' rather than with a *devisee* is so fatuous as to not merit response."

8. ¶We conclude that the District Court's refusal to appoint Bowers and White on the basis of a conflict with Shannon was an abuse of the court's discretion. We have stated that a district court can "refuse to appoint a person as personal representative for cause if there is a conflict of interest between that person's interests and those of the estate." *Estate of Peterson*, 265 Mont. at 108, 874 P.2d at 1232 (citing *Estate of Obstarczyk* (1963), 141 Mont. at 351-53, 377 P.2d at 534-35). In *Estate of Peterson*, we upheld a district court's decision to remove a personal administrator for cause because the estate had a potential claim against the personal administrator for excessive attorney fees. *Estate of Peterson*, 265 Mont. at 108-9, 874 P.2d at 1232-33. However, the District Court's refusal to appoint Bowers and White was not based on a conflict between Bowers and White and the Estate, but rather a "conflict" between Bowers and White and Shannon, a devisee of the Estate. This conflict appears to be based on Shannon's concern that Bowers and White will attempt to avoid paying estate and inheritance taxes due on the Montana property out of the residuary Estate as Shannon claims is required by Charles Kuralt's will. We see no reason to refuse the appointment of Bowers and White simply because they may likely resist the claims of a devisee. As Bowers and White observe, by resisting Shannon's claims they would be fulfilling their duty to strictly examine all claims against the Estate. *See, e.g., Estate of Obstarczyk* (1963), 141 Mont. at 351, 377 P.2d at 534. Furthermore, as discussed below, Shannon's concerns regarding Bowers and White's appointment can be adequately accounted for by requiring Bowers and White to post a bond.

9. ¶In response to Bowers and White's petition for appointment, Shannon stated that she would withdraw her resistance to their petition if Bowers and White would be willing to post a satisfactory bond. The District Court did not reach the issue of whether Bowers and White should be required to post a bond, however, because it refused Bowers and White's petition. Section 72-3-513(2), MCA, provides that a "bond is not required of a personal representative . . . if the will relieves the personal representative of bond unless bond has been requested by an interested party and the court is satisfied that it is desirable." Shannon, an interested party, has requested a bond. We agree that a bond is desirable in this instance considering the entire

context of these protracted proceedings. Accordingly, we remand for further proceedings consistent with this opinion and with the express direction that the District Court require Bowers and White to post a bond in an amount set by the District Court .

10. ¶Reversed and remanded.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter dissents.

1. ¶I respectfully dissent from the majority opinion.
2. ¶Judge John Christensen has presided in this case since July 1999. He has a working knowledge of all filings related to this matter, and a broad, on-going understanding of the issues and the positions of the parties. Additionally, he has presided over two evidentiary hearings during which he was able to observe the demeanor of the parties and/or their representatives, as well as the intensity level of their respective positions.
3. ¶As a result of his singular understanding of this case, Judge Christensen found that Bowers and White "were unwilling to assume responsibility for payment of taxes, management, protection and preservation of the Estate's assets in Montana." He also found that Shannon was not an appropriate person to represent the Charles Kuralt Estate in that her appointment "would do little to resolve the many claims clouding the Estate in that she is an active litigant in those very claims."
4. ¶The majority states at ¶ 19: "We see no reason to refuse the appointment of Bowers

and White simply because they may likely resist the claims of a devisee." Whether or not we see a reason to refuse the appointment is not the issue. The issue is whether the district court abused its discretion in refusing it. I would hold that it was within the district court's discretion to determine whether Bowers and White, and Shannon for that matter, should act as personal representatives of the Estate. Therefore, I would conclude that it was not an abuse of discretion for Judge Christensen to decide that the "best interests of all affected parties in this Estate" were better served by the court-appointed Special Administrator. I would affirm.

/S/ PATRICIA COTTER