DECISION
This matter is before the Court on appeal by Steven Ricci, father of Anthony Gemma, the deceased, from an Order of the Probate Court of the City of Warwick of May 15, 2008. The Probate Court's Order denied Mr. Ricci's Petition to Remove Kathleen Gemma as the Administrator of the Estate of Anthony Gemma. This Court has jurisdiction over probate appeals pursuant to G.L. 1956 § 33-23-1.
 Facts and Travel
On December 15, 2006, Anthony Gemma died intestate as a result of a motor vehicle collision with a drunk driver.[1] Anthony was 17 years old at the time of his death and is survived by his mother, Kathleen Gemma, and father, Steven Ricci. Mr. Ricci is the biological father of Anthony; however, Mr. Ricci had very little contact with his son during Anthony's life.
Ms. Gemma filed a petition for administration with the Warwick Probate Court. Mr. Ricci executed a waiver consenting to the appointment of Ms. Gemma as the Administratrix. The Probate Court then established the Estate of Anthony Gemma ("Estate") and appointed Ms. Gemma as Administratrix of the Estate on May 17, 2007.
On January 28, 2008, Mr. Ricci filed a petition to remove Ms. Gemma as the Administratrix, alleging that Ms. Gemma and her attorney attempted to deprive Ricci of his legal *Page 2 
share of the Estate. Mr. Ricci's petition sought to appoint himself as the new Administrator of the Estate; however, he now seeks the appointment of a neutral administrator.
Ms. Gemma opposed the Removal Petition, and the Probate Court heard arguments on the Removal Petition on May 15, 2008. On June 6, 2008, the Probate Court issued an Order denying the petition and retained Ms. Gemma as Administratrix of the Estate. However, the Probate Court ordered Ms. Gemma, through her counsel, to share documents and information regarding the wrongful death litigation with Mr. Ricci to the extent that attorney-client privilege allows. The Order also provided that should any money flow into the Estate, the original bond be immediately increased to a bond with corporate surety in the amount equal to that coming into the Estate. Mandated periodic reviews before the Court were scheduled.
Mr. Ricci promptly filed an appeal of the Probate Court's Order with this Court pursuant to § 33-23-1. At a hearing before this Court, the parties waived their rights to an evidentiary hearing. The parties agreed that there were no issues of fact and rested on the Probate Court record. This Court heard oral argument on the matter on December 12, 2008.
 Standard of Review
Pursuant to Rhode Island General Laws § 33-23-1(d), an appeal from probate court "is not an appeal on error but is to be heard de novo in the superior court." Our Supreme Court has reiterated that the Superior Court's function in Probate Court appeals is to act as a "court for retrial of the case de novo." In re Estate of Taylor, 114 R.I. 562, 564,337 A.2d 236, 238 (R.I. 1975) (quoting Malinou v. McCarthy, 98 R.I. 189,192, 200 A.2d 578, 579 (1964)). Section 33-23-1 further provides that this Court may give the Probate Court "as much weight and deference as the superior court deems appropriate, however, the superior court shall not be bound by any such findings or decisions." *Page 3 
The removal of an administrator of an estate is governed by Rhode Island General Laws § 33-18-2. An administrator may be removed whenever he or she becomes "incapable of executing his or her trust, or shall neglect or refuse to do the duties of the trust, or shall waste the estate of his or her ward or that on which he or she administers."Id. Our Supreme Court has held that the burden is on the petitioner to show some improper acts, or neglect of duty in order to remove an administrator. Sayles v. Steere, 85 A. 929, 929 (R.I. 1913).
 Analysis
In his Removal Petition, Mr. Ricci argues that there is clear and convincing evidence that Ms. Gemma's personal animosity towards Mr. Ricci has rendered her incapable of discharging her fiduciary duties to the Estate and to Mr. Ricci as an heir at law. Mr. Ricci claims that Ms. Gemma and her attorney took overt actions to defeat Mr. Ricci's legal rights as an heir at law. Mr. Ricci asserts that Ms. Gemma and her attorney made statements to the effect that they do not believe Mr. Ricci should obtain his legal share of the Estate because he did not have a relationship with his son Anthony prior to his death.[2] Mr. Ricci additionally argues that Ms. Gemma should be removed as the Administratrix of the Estate because she and her attorney stated that they will attempt to change the existing law in Rhode Island to prevent absentee parents, such as Mr. Ricci, from benefiting from the death of their children. *Page 4 
Mr. Ricci first contends that Ms. Gemma's conflict of interest bars her from service as administrator. The Rhode Island removal statute does not require removal for an alleged conflict. R.I.G.L. § 33-18-2. Mr. Ricci suggests that the statute should be broadly construed, and he refers to cases from other jurisdictions. Other states show a diversity of opinion. A court may remove an administrator if there is a conflict of interest between the administrator's interest and the interest of the estate. See In re Estate of Kuralt, (2001) 306 Mont. 73, 77,30 P.3d 345, 348-49. However, "[t]he mere existence of conflict between a personal representative and a beneficiary is an inadequate reason for removal of the personal representative." Blackmon v. Weaver,621 S.E.2d 42, 45 (S.C.Ct.App. 2005); see also Parker v. Shullman, 843 So.2d 960
(Fla.App. 4 Dist. 2003) (acrimonious relationship between personal representative and beneficiary did not require removal of the personal representative); Matter of the Estate of Sumpter, 419 N.W.2d 765, 770
(Mich.Ct.App. 1988) ("Personal animosity between the personal representative and one beneficiary of the estate is an insufficient reason for removal.").
Here, Mr. Ricci failed to show that Ms. Gemma's interest necessarily conflict with the interests of the Estate. The fact that Ms. Gemma may disagree with the law, or Mr. Ricci's pursuit of his legal right to money from his deceased son's estate, does not reasonably infer that she will not adhere to the law.[3] Moreover, there is scant evidence that Ms. Gemma has not, or will not, act in the best interest of the Estate. Ms. Gemma has fulfilled her obligations as Administratrix of the Estate by pursuing the wrongful death suit, the most significant asset of the Estate. She has closely followed and attended court proceedings regarding the prosecution of the individual responsible for the motor vehicle collision resulting in Anthony's death, as well as the probate and wrongful death proceedings. Ms. Gemma has not become incapable of executing *Page 5 
her trust based on any alleged conflict of interest due to the personal animosity between Ms. Gemma and Mr. Ricci. To the contrary, her actions display a zealous desire to press for judicial action.
Mr. Ricci also asserts that Ms. Gemma should be removed as the Administratrix of the Estate because she may seek a larger allocation of the wrongful death proceeds based on her loss of society and companionship claim. This argument does not provide an appropriate basis for removing Ms. Gemma as the Administratrix of the Estate for several reasons. First, the Rhode Island Supreme Court has long held that "the mere fact that one has a claim against an estate is not a disqualification for the office [of Administratrix], nor evidence of unsuitableness to discharge the duties of the trust." Murray v.Angell, 16 R.I. 692, 19 A. 246 (1890) (denied petition of removal of administrator on the ground that administrator had personal claim against the estate for board and care of the deceased). Thus, the fact that Ms. Gemma may press a personal claim based on her loss of society and companionship does not provide a basis for her removal as Administratrix at this time.
Mr. Ricci's argument that Ms. Gemma will seek a larger allocation of the wrongful death proceeds is premature. To this Court's knowledge, there is no money in the Estate at this time. When, and if, money does flow into the Estate, any distributions made from the Estate or settlements negotiated on behalf of the Estate are subject to approval or authorization by the Probate Court. Ms. Gemma, as the Administratrix, is required to file a statement with the Probate Court "setting out the names of the legatees, the amounts to be paid, and the property to be turned over to them respectively, or to be held by himself or herself as trustee." G.L. 1956 § 33-13-6. "Upon a hearing on the statement, the Court shall approve the statement as filed, or shall amend and approve the same as amended, and shall enter its order directing the payment *Page 6 
and satisfaction of the legacies." G.L. 1956 § 33-13-7. With respect to any potential settlements, Section 33-18-16 provides that
 [t]he probate court may authorize . . . administrators . . . to adjust by compromise, or otherwise settle or dispose of, any claim in favor of or against, or any controversy or thing whatever relating to the estates by them represented . . . and for any of these purposes to enter into, give, execute, make, and do the Probate Court may authorize an administratrix to enter into a settlement agreement, and approve such settlement by order or decree. G.L. 1956 § 33-18-16.
The Probate Courts routinely receive and review accounts. G.L. 1956 ch. 33-14. Therefore, the Probate Court will monitor and may amend distributions and authorize any settlement[4] negotiated on behalf of the Estate, further ensuring protection of Mr. Ricci's legal rights.
In addition to the statutory protections providing judicial supervision over the distributions of the Estate, Mr. Ricci's concerns regarding Ms. Gemma's role as Administratrix is further allayed by the Probate Court's requirement that Ms. Gemma post a bond. The Probate Courts are empowered to do that which is necessary and incidental to the jurisdictional powers provided in G.L. 1956 § 8-9-9. Burford v. Estateof Skelly, 699 A.2d 854 (R.I. 1997). Among the jurisdictional powers set forth in § 8-9-9 is the power to accept and allow bonds. Based on this jurisdictional directive, the Probate Court's June 2008 Order requires that, as any money flows in or out of the Estate, the original $50,000 bond set without surety be immediately increased to a corporate surety bond in an amount equal to any money in the Estate. The Probate Court's requirements of a substantial bond, access to litigation progress, and periodic reviews appropriately safeguard Mr. Ricci's interests in the Estate. Mr. Ricci's interests are well-protected.
Mr. Ricci additionally argues that Ms. Gemma should be removed as the Adminstratrix of the Estate because Ms. Gemma violated an understanding between the parties to share all *Page 7 
information regarding the proceedings in the separate wrongful death litigation. A series of letters and e-mails went back and forth between Ms. Gemma's counsel, and Mr. Ricci's counsel regarding a possible settlement from Allstate Insurance Company. In July 2007, Mr. Ricci's counsel wrote to Ms. Gemma's counsel, inquiring about a possible settlement offer or receipt of settlement funds. In e-mails of September 7 and 11, 2007, Ms. Gemma's counsel responded that no settlement proposal had been tendered by Allstate. On March 4, 2008, Allstate responded to a request from Mr. Ricci's counsel with a letter stating that a settlement proposal had been extended on August 30, 2007.[5]
Ms. Gemma's counsel then explained the offer had been extended to an associate of the law firm and he was unaware of the proposal when he told Mr. Ricci's counsel that no proposals were received.
While the settlement proposal was extended just before a holiday weekend, Ms. Gemma's counsel may not have personally been aware of a settlement offer. However, he should have been diligent to check with associates handling the matter, to correct his earlier misstatement, and to keep Mr. Ricci's counsel informed.[6] Regardless, these facts do not establish that Ms. Gemma is incapable of executing her trust.[7] *Page 8 
Mr. Ricci also raises the argument that Ms. Gemma's attorney has a conflict of interest in representing Ms. Gemma as the Administratrix of the Estate and concurrently representing Ms. Gemma in the wrongful death litigation. Any conflict of interest that Ms. Gemma's counsel may have is more appropriately a question for another forum. See generally
Supreme Court Rules, Art. III.
 Conclusion
This Court finds that there is no affirmative proof to support the removal of Ms. Gemma as the Administratrix of the Estate. It has not been established that Ms. Gemma is incapable of executing her trust, wasted any assets of the trust, or neglected to carry out the duties of her trust. Accordingly, this Court agrees with the Probate Court Order of June 6, 2008, and finds that Ms. Gemma is not incapable of executing the trust. Consequently, Mr. Ricci's appeal to this Court is dismissed, and the Order of the Probate Court is affirmed.
Counsel may submit an appropriate order for entry.
[1] Criminal and civil actions have been filed relating to the motor vehicle collision.
[2] Rhode Island intestacy laws provide that the estate of a person who died intestate shall pass in equal shares to his parents, if they survive him, when the deceased is not survived by a spouse or children. G.L. 1956 § 33-1-1 et seq. Additionally, § 10-7-2 allows an executor or administrator to bring a wrongful death action on behalf of the estate. The amount recovered under § 10-7-2 shall be distributed "to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by the persons dying intestate," when the decedent is not survived by a husband, widow or children. The Rhode Island Supreme Court has held that the court does not need to determine the closeness of relationship between parents and their deceased children before a parent is eligible to recover under § 10-7-2.Sindelar v. Leguia, 750 A.2d 967, 971 (R.I. 2000).
[3] To assume that one who is working within the law to modify a law which she disagrees with, or even detests, is to give short shrift to the heroes of American history.
[4] Allstate appears to be proposing to settle for the maximum coverage afforded by the policy, hence, the parties are unlikely to disagree on the approaches to that litigation.
[5] It is unclear whether the August 2007 proposal was firm or conditional as there is no written documentation.
[6] Unfortunately, the animosity between the clients appears to have extended to the attorneys. The e-mails issued by counsel for Ms. Gemma denote a personal animosity by counsel for Mr. Ricci. (Exhibits 9 and 10 of appellant's memorandum). By using this inappropriate tone, counsel empowers others to questions his own conduct, rather than the merits of his case. As another court stated:
 To engage in the practice of law is to engage in a noble profession. It is to approach the resolution of disputes with a spirit of high mindedness and with knowledge that the client's problems and antagonisms are not the lawyer's. By providing professional assistance to those who cannot resolve disputes without outside intervention and by championing their causes and interests in a professional manner, lawyers daily perform services of great social utility. But this kind of performance has no place in our judicial system. Behavior of the type this record reveals demeans the participants, demeans the witnesses and demeans the very system and essence of justice itself. It simply cannot be tolerated. . . . Self-help through bombast or insults is not an option. Cholfin v. Gordon, 1995 WL 809916, 9 (Mass.Super. 1995).
[7] Although there may have been a "gentlemen's agreement" to share information between the parties regarding the wrongful death litigation, this Court does not find it appropriate to enforce that agreement as it was not part of any order. See Schofield v. French, 36 F.Supp.2d 481,486 (D.R.I. 1999) (Federal district court refused to enforce "gentlemen's agreement."). *Page 1