No. 98-203

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 42

IN RE INQUIRY INTO A.W., D.G., and M.G., JR.

APPEAL FROM: District Court of the Fourteenth Judicial District,

In and for the County of Musselshell,

The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Mark L. Guenther; Nash, Guenther & Zimmer; Bozeman, Montana

(for Laurie Grove)

Virginia Bryan; Wright, Tolliver & Guthals; Billings, Montana

(for Mike Grove)

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General; Helena, Montana

John V. Potter, Jr., Meagher County Attorney; Vicki Knudson,

Acting Special Deputy; White Sulphur Springs, Montana

Guardian Ad Litem:

Floyd Brower, Attorney at Law; White Sulphur Springs, Montana

Submitted on Briefs: October 29, 1998

Decided: March 16, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. The Department of Public Health and Human Services (DPHHS) filed a petition for temporary investigative authority and protective services in the District Court for the Fourteenth Judicial District in Mussellshell County, on behalf of the three minor children of Michael and Leslie Grove. After the children were first removed from their parents' home and then returned to their parents' care, the District Court ordered the parents to reimburse the county for the guardian ad litem's fees and costs. Michael and Leslie appeal from the imposition of fees and costs. We reverse the order of the District Court.**

**¶2. We limit our consideration to the issue of whether the District Court had statutory authority to order parents who are the subject of a parental neglect or abuse investigation to reimburse the county for costs and fees of the guardian ad litem.**

## FACTUAL AND PROCEDURAL BACKGROUND

**¶3. DPHHS received a report of sexual abuse related to the Groves' minor children and stepchild. On March 28, 1997, DPHHS filed a petition for temporary investigative authority and protective services on behalf of A.W., D.G., and M.G., Jr., in Meagher County. The venue for the petition was subsequently changed to Mussellshell County, where the District Court appointed Floyd Brower to be guardian ad litem for the children. Over the ensuing eight months, Brower submitted to Meagher County statements of fees and costs totaling almost $20,000. Meagher County reimbursed Brower based upon those statements.**

**¶4. In October 1997, DPHHS sought an order from the District Court requiring the Groves to reimburse the County for the guardian's fees and costs. The parties**

stipulated to the Groves' financial ability to repay the County, but the Groves argued that they were not responsible for those fees and costs. The District Court ordered the Groves to reimburse the County.

## DISCUSSION

**¶5. Does the District Court have statutory authority to order parents who are the subject of a parental neglect or abuse investigation to reimburse the county for costs and fees of the guardian ad litem?**

**¶6. The District Court concluded that § 41-3-303, MCA, requires parents to pay the fees and costs of the court-appointed guardian ad litem if they have the financial resources to do so. We review questions of statutory interpretation as a question of law to determine whether the district court's interpretation and application of the law was correct. *See State v. Bell* (1996), 277 Mont. 482, 486, 923 P.2d 524, 526.**

**¶7. The Groves contend that nothing in the statute authorizes the court to require parents to pay for the guardian ad litem, and that the legislative history suggests no such legislative intent.**

**¶8. Section 41-3-303(1), MCA, states:**

In every judicial proceeding, the court shall appoint for any child alleged to be abused or neglected a guardian ad litem. The department or any of its staff may not be appointed as a guardian ad litem in a judicial proceeding under this title. When necessary the guardian ad litem may serve at public expense.

**¶9. The role of courts in applying a statute has always been "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Statutory language must be construed according to its plain meaning and if the language is clear and unambiguous, no further interpretation is required. *See Lovell v. State Comp. Mut. Ins. Fund* (1993), 260 Mont. 279, 285, 860 P.2d 95, 99.**

**¶10. The District Court concluded that the permissive language, "may," in the final sentence of the statute, "bolstered by the addition of the words 'when necessary'" (emphasis omitted), means that parents must pay for the guardian ad**

litem unless they are financially unable to do so, at which point the guardian may serve at public expense. However, the District Court's interpretation of the statute is not supported by its plain language, its legislative history, or its consideration in combination with other dependent and neglect provisions.

¶11. Section 303 was enacted in response to federal legislation which provided funding for state-level child abuse prevention programs. Federal rules required states to insure the appointment of a guardian ad litem in such cases. One of the ways in which the rule could be satisfied was by passage of a statute which mandated such an appointment. *See* 45 C.F.R. § 1340.14 (1997).

¶12. Prior to the enactment of Section 303, DPHHS acted as both the investigator for the state and as the entity which provided for the best interests of the child.

¶13. The Montana Senate heard testimony from the Director of DPHHS's predecessor agency that appointment of guardians ad litem would provide better representation of a child's interest in abuse proceedings, free from any conflict of interest which may result from DPHHS's dual role. *See* Testimony before the Senate Judiciary Committee on Senate Bill 301 (Feb. 13, 1979) (testimony of the Department of Social and Rehabilitative Services). Although the guardian ad litem statute shifted responsibility for protecting the child's best interest, there is no indication in the legislative history that the expense of that service was to be shifted to the child's parents.

¶14. Furthermore, "[s]tatutes do not exist in a vacuum, [but] must be read in relationship to one another to effectuate the intent of the statutes as a whole." *Marsh v. Overland* (1995), 274 Mont. 21, 28, 905 P.2d 1088, 1092. We are unable to discern an intent to impose the cost of guardians on parents when considering § 41-3-303, MCA, in the context of other related statutes.

¶15. There are other provisions within Montana's child abuse statutes which require parents who are financially able to do so to provide for the costs of care, custody, and treatment of their children. Section 41-3-406, MCA, was amended by the Legislature in 1991 to require parents to provide for the costs of caring for their children while in the custody of the department, and to make DPHHS the payor of last resort. There is also at least one other guardian ad litem provision in the code which requires parents to pay the guardian's fees and costs. Section 40-4-205(4), MCA, the guardian ad litem

statute applicable to child support, custody, and visitation cases, which was enacted in 1975, states: "The court shall enter an order for costs and fees in favor of the child's guardian ad litem. The order must be made against either or both parents, except that if the responsible party is indigent, the costs must be waived." Section 41-3-303, MCA, was enacted four years later.

¶16. Presumably, if the Legislature had intended that the parents also pay for the services of guardians ad litem, under the circumstances of this case, it would have included in § 41-3-303, MCA, language similar to the existing language of § 40-4-205 (4), MCA. Alternatively, when the Legislature was revising the child abuse statutes to reflect the policy of requiring parents to pay for certain aspects of a child's care, it could have amended Section 303 to reflect a similar requirement, had it intended that result. Therefore, we conclude that neither the plain language of the statute, nor its legislative history, nor its statutory context suggests any intent to require parents to pay for guardians ad litem appointed to represent children in cases of abuse and neglect.

¶17. We conclude that the District Court erred when it interpreted § 41-3-303, MCA, to require the Groves to pay for guardian ad litem services for their minor children following a petition for protective services, and we reverse the order of the District Court which required the Groves to reimburse Meagher County for those services.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

No

/S/ W. WILLIAM LEAPHART