No. 00-086

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 73

STATE OF MONTANA,

Plaintiff/Appellant,

v.

BRYAN GOEBEL,

Defendant/Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Mineral,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Diana Leibinger-Koch, Special Assistant Attorney General, Department of Corrections, Helena, Montana

For Respondent:

Edmund R. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

Submitted on Briefs: April 12, 2001
Decided: April 26, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The District Court for the Fourth Judicial District, Mineral County, dismissed the petition of the Mineral County Attorney requesting that the court revoke Bryan Goebel's suspended sentence. The Department of Corrections (the DOC) appeals on behalf of the State. We reverse and remand for further proceedings consistent with this opinion.

¶2 The DOC presents the following issue on appeal:

¶3 Whether the District Court erred when it dismissed the State's petition to revoke Goebel's suspended sentence because the DOC failed to hold a hearing pursuant to § 46-23-1012(4), MCA, within 36 hours of Goebel's arrest.

## Factual and Procedural Background

¶4 On January 16, 1991, Goebel pleaded guilty to a charge of felony theft. The District Court subsequently sentenced him to ten years imprisonment with five years suspended. Goebel discharged the imprisonment portion of his sentence and began serving his probationary sentence on August 19, 1994. On July 23, 1998, the District Court revoked Goebel's five-year suspended sentence, but reinstated that sentence with additional terms and conditions including completion of anger management, domestic violence, and chemical dependency counseling, as well as repayment of his original restitution obligation in monthly installments of not less than $50.

¶5 On April 29, 1999, Goebel was arrested by a Mineral County deputy sheriff, without a warrant, for his alleged involvement in a conspiracy to manufacture methamphetamine. A complaint for this offense was filed in the Mineral County Justice Court, but no charges were ever filed in the District Court of Mineral County, nor was Goebel arrested, either by his probation officer or by a warrant issued by a court, for allegedly violating his probation. On May 24, 1999, Goebel was indicted on federal charges of possession with

intent to distribute methamphetamine. The charges in Mineral County were dismissed.

¶6 Goebel was released under certain conditions on the federal charges on June 3, 1999. Later that same day, he was taken into custody by his probation officer pursuant to § 46-23-1012, MCA. On June 8, 1999, Goebel's probation officer filed a report alleging that Goebel had violated the terms and conditions of his probation because he had used marijuana, because he failed to pay court-ordered restitution, and because he had been arrested on the federal possession charges. The following day, the Mineral County Attorney filed a Petition for Revocation of Suspended Sentence. The District Court set bond for Goebel at $50,000.

¶7 Goebel appeared in District Court on June 10, 1999, to answer the charges in the petition. At that time, he acknowledged his rights and requested court-appointed counsel. On June 17, 1999, Goebel moved the court for a continuance of the hearing on the petition and on July 8, 1999, he again moved for a continuance "until the Federal charges have been resolved." The court granted Goebel's motion.

¶8 On September 29, 1999, the United States District Court dismissed the federal charges against Goebel. And, on October 20, 1999, Goebel moved the District Court for the dismissal of the petition against him because the State failed to comply with the provisions of § 46-23-1012(4) and (5), MCA, regarding the probation violator prison diversion program. In response, the State argued that the probation violator prison diversion program is discretionary, not mandatory, and that the Legislature did not intend "to replace the existing process of adjudicating probation violations judicially."

¶9 After oral argument on the matter, the District Court, on December 27, 1999, ruled that a hearing under the probation violator prison diversion program is mandatory in every case in which a probation officer alleges an offender violated probation and that "[f]ailure to follow that step is [the] basis for dismissal in this instance." Hence the court dismissed the petition and the DOC appeals.

## Standard of Review

¶10 The grant or denial of a motion to dismiss in a criminal case is a question of law which we review de novo. *State v. Diesen*, 2000 MT 1, ¶ 11, 297 Mont. 459, ¶ 11, 992 P.2d 1287, ¶ 11 (citing *State v. Reams* (1997), 284 Mont. 448, 450, 945 P.2d 52, 54). Our standard of review of a conclusion of law being plenary, we review a district court's denial

of a motion to dismiss to determine whether the court's conclusion of law is correct. *Diesen*, ¶ 11 (citing *City of Helena v. Danichek* (1996), 277 Mont. 461, 463, 922 P.2d 1170, 1172).

## Discussion

¶11 *Whether the District Court erred when it dismissed the State's petition to revoke Goebel's suspended sentence because the DOC failed to hold a hearing pursuant to § 46-23-1012(4), MCA, within 36 hours of Goebel's arrest.*

¶ 12 Section 46-23-1012, MCA, provides:

> **Arrest when violations of probation alleged -- probation compliance plan -- probation violator prison diversion program.** (1) At any time during probation or suspension of sentence, a court may issue a warrant for the arrest of the defendant for violation of any of the conditions of release or a notice to appear to answer to a charge of violation. The notice must be personally served upon the defendant. The warrant must authorize all officers named in the warrant to return the defendant to the custody of the court or to any suitable detention facility designated by the court.
>
> (2) Any probation and parole officer may arrest the defendant without a warrant or may deputize any other officer with power of arrest to do so by giving the officer oral authorization and within 12 hours delivering to the place of detention a written statement setting forth that the defendant has, in the judgment of the probation and parole officer, violated the conditions of the defendant's release. A written statement or oral authorization delivered with the defendant by the arresting officer to the official in charge of a county detention center or other place of detention is sufficient warrant for the detention of the defendant if the probation and parole officer delivers the written statement within 12 hours of the defendant's arrest. The probation and parole officer, after making an arrest, shall present to the detaining authorities a similar statement of the circumstances of violation.
>
> (3) Provisions regarding release on bail of a person charged with a crime are applicable to the defendants arrested under these provisions.
>
> (4) Any probation and parole officer may hold a defendant arrested under subsection (1) without bail for 72 hours. After the arrest of the defendant pursuant to this

subsection, a hearings officer for the probation and parole bureau shall hold a hearing within 36 hours of the defendant's arrest. The hearings officer shall determine whether there is probable cause to believe that the defendant has violated a condition of probation and, if probable cause exists, notify the sentencing court and determine an appropriate plan to ensure the defendant's compliance with the conditions of probation. An appropriate plan may include:

(a) holding the defendant for a period of time up to 30 days, with credit for any time served from the time of the arrest to the time of the hearing to determine probable cause;

(b) a request to the court pursuant to 46-23-1011 to modify the defendant's terms or conditions of probation; or

(c) a notification to the court with jurisdiction over the defendant pursuant to 46-23-1013.

(5) The department shall adopt policies and procedures to implement a probation violator prison diversion program. If the department is able to sufficiently sanction a defendant with a term in a detention center as provided in subsection (4)(a) for a proven technical violation that could result in the revocation of a suspended or deferred sentence, the department may pay the expense of the detention center costs and pursue payment of costs by the defendant as provided in 7-32-2245. If the action plan developed for the defendant proceeds as provided in subsection (4)(b) or (4)(c), the expenses of the detention must be paid as provided in 7-32-2242.

The Legislature added subsections (4) and (5), regarding the probation violator prison diversion program, to the statute in 1999. But the 1999 Legislature made no changes to § 46-23-1013, MCA, which provides:

**Action of court after arrest.** (1) Upon such arrest and detention, the probation and parole officer shall immediately notify the court with jurisdiction over such prisoner and shall submit in writing a report showing in what manner the defendant has violated the conditions of release. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged. The hearing may be informal or summary.

(2) If the violation is established, the court may continue to revoke the probation or suspension of sentence and may require him to serve the sentence imposed or any lesser sentence and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

(3) If it shall appear that he has violated the provisions of his release, whether the time from the issuing of such warrant to the date of his arrest or any part of it shall be counted as time served on probation or suspended sentence shall be determined by the court.

¶13 Goebel argued before the District Court that the petition against him should be dismissed because the State failed to comply with § 46-23-1012(4), MCA, by not holding a hearing within 36 hours of his arrest. The District Court agreed and dismissed the petition to revoke Goebel's suspended sentence.

¶14 The DOC argues on appeal that the District Court erred in dismissing the petition. The DOC contends that when the 1999 Legislature added the probation violator prison diversion program to § 46-23-1012, MCA, it only mandated the probation and parole bureau conduct a hearing in the case of violators who, unlike Goebel, are arrested pursuant to a warrant issued by a judge. The DOC further contends that the Legislature left to the discretion of the probation and parole bureau the decision of whether to hold a hearing for every other violator.

¶15 In addition, the DOC argues that the Legislature omitted words from § 46-23-1012, MCA, that would have made the hearing mandatory, and omitted words from § 46-23-1013, MCA, that would have indicated that the bureau must first conduct an administrative hearing before a judge could decide if an offender should remain at liberty. The DOC contends that the natural, plain, ordinary and commonly understood meaning of the words the Legislature chose to include in § 46-23-1012, MCA, also indicate the Legislature's intent to enact a program probation officers could use with appropriate offenders, not every offender.

¶16 This Court has repeatedly held that the role of courts in applying a statute has always been

"to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101,

MCA. Statutory language must be construed according to its plain meaning and if the language is clear and unambiguous, no further interpretation is required.

*In re Adoption of Snyder, 2000 MT 61, ¶ 16, 299 Mont. 40, ¶ 16, 996 P.2d 875, ¶ 16 (citing In re Inquiry into A.W., 1999 MT 42, ¶ 9, 293 Mont. 358, ¶ 9, 975 P.2d 1250, ¶ 9).*

¶17 Furthermore, the intent of the Legislature is controlling when construing a statute.

The intention of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, the courts may not go further and apply any other means of interpretation. Where . . . the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. . . . There is simply no reason for the use of legislative history to construe a statute where the language is clear and unambiguous on its face.

*State v. Hubbard (1982), 200 Mont. 106, 111, 649 P.2d 1331, 1333 (internal citations omitted). In determining legislative intent, this Court will construe criminal statutes "with a view to effect their object and to promote justice." City of Missoula v. Gillispie, 1999 MT 268, ¶ 25, 296 Mont. 444, ¶ 25, 989 P.2d 401, ¶ 25 (citing State v. Sunday (1980), 187 Mont. 292, 299, 609 P.2d 1188, 1193; State v. Shannon (1976), 171 Mont. 25, 28, 554 P.2d 743, 744).*

¶18 As the DOC points out, there are two methods by which an offender can come into custody for allegations of probation violation: (1) § 46-23-1012(1), MCA, which allows the judge to issue a warrant for the offender's arrest; and (2) § 46-23-1012(2), MCA, which allows a probation and parole officer to arrest the offender, or the probation and parole officer may authorize a law enforcement officer to arrest the offender. In this case, the probation and parole officer arrested Goebel after federal prosecutors first indicted Goebel for allegedly manufacturing methamphetamine and after the federal court released him from jail. Although the probation and parole officer did not cite to the subsection of § 46-23-1012, MCA, under which she arrested Goebel, the officer must have arrested Goebel pursuant to subsection (2), since no judge had issued a warrant or notice for Goebel to appear pursuant to subsection (1).

¶19 Contrary to Goebel's contention, the phrase "this subsection" in § 46-23-1012(4), MCA, does not mandate the probation and parole bureau hold the hearing described in

subsection (4) in every case of alleged probation violation before the court may proceed under § 46-23-1013, MCA. Nor does the phrase "this subsection" refer to subsection (4) as the DOC contends. The first sentence of § 46-23-1012(4), MCA, states: "Any probation and parole officer may hold a defendant arrested under subsection (1) without bail for 72 hours." The next sentence of subsection (4) states, in part: "After the arrest of the defendant pursuant to *this subsection* . . . (emphasis added)." Because a defendant may only be arrested under the provisions of subsections (1) and (2), the phrase "[a]fter the arrest of the defendant pursuant to this subsection," cannot refer to the entirety of § 46-23-1012, MCA, as Goebel contends or to subsection (4) as the DOC contends. Clearly, "this subsection" relates back to the reference in the previous sentence to subsection (1), which allows a judge to issue a warrant or notice to appear.

¶20 Therefore, we hold that under the plain meaning of § 46-23-1012, MCA, a probable cause hearing is only mandatory when an offender has been arrested pursuant to a warrant issued by a judge. In this case, Goebel was taken into custody by his probation officer without a warrant, hence, it was not mandatory in this case to hold a hearing within 36 hours of Goebel's arrest.

¶21 In its brief on appeal, the DOC goes into a lengthy discussion of the legislative history of § 46-23-1012(4), MCA, and the Legislature's intent in enacting that subsection. However, as we already noted, there is no reason for us to engage in a discussion of the legislative history to construe this statute when we have determined that the language of the statute is clear and unambiguous on its face. *Hubbard,* 200 Mont. at 111, 649 P.2d at 1333. Accordingly, we hold that the District Court erred when it dismissed the State's petition to revoke Goebel's suspended sentence.

¶22 In reaching this result it is necessary that we make a final observation, however. It is hard to be critical of the District Court's decision. The Judge made a common sense interpretation of a statute that, itself, is illogical. For an arrest warrant to issue, there has to be probable cause. *See* § 46-18-203(1). *See also United States v. Finkielstain* (S.D.N.Y. 1999), 1999 WL 1267467, 3; *Presley v. Morrison* (E.D. Pa. 1996), 950 F.Supp. 1298, 1303. Thus, it makes little sense to require a second probable cause hearing, as the statute plainly does, when the defendant is arrested on a warrant issued by a judge. Conversely, when a probation and parole officer arrests the defendant without a warrant, common sense would dictate that there should be a reasonably prompt probable cause determination for the arrest. Unfortunately, the statute does not require that.

¶23 We suspect that in adding subsection (4) to § 46-23-1012, MCA, the Legislature made a drafting error and that it meant to refer to subsection (2) in the second sentence of subsection (4) rather than to the antecedent subsection (1). Nonetheless, to the extent that there is an error and to the extent that the statute does not accurately reflect the Legislature's clearly expressed intention, it is appropriate that the Legislature correct the problem, not the courts. *See Ingraham v. Champion Intern.* (1990), 243 Mont. 42, 49, 793 P.2d 769, 773 (citing *State, Dept. of Hwys v. Public Employees Craft Coun.* (1974), 165 Mont. 349, 529 P.2d 785; *State ex rel. Grant v. Eaton* (1943), 114 Mont. 199, 133 P.2d 588).

¶24 Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER