OP 10-0280

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2011 MT 104

UNITED STATES OF AMERICA,

      Petitioner

v.

JUVENILE MALE,

      Respondent.

ORIGINAL PROCEEDING: Certified Question from the Supreme Court of the United States
                           Cause No. 09-940

COUNSEL OF RECORD:

      For Petitioner:

            Michael R. Dreeben (argued), Deputy Solicitor General; Neal Kumar
            Katyal, Acting Solicitor General; Lanny A. Breuer, Assistant Attorney
            General; Roy W. McLeese, III, Acting Deputy Solicitor General; Melissa
            Arbus Sherry, Assistant to the Solicitor General; J. Campbell Barker,
            Attorney, Department of Justice; Washington, District of Columbia

            Michael W. Cotter, United States Attorney; Leif Johnson, Assistant United
            States Attorney, District of Montana; Billings, Montana

      For Respondent:

            Michael Donahoe (argued), Senior Litigator, Federal Defenders of
            Montana; Anthony R. Gallagher, Federal Defender; Helena, Montana

      For Amicus Curiae State of Montana:

            Steve Bullock, Montana Attorney General; J. Stuart Segrest, Assistant
            Attorney General; Helena, Montana

Argued: January 19, 2011
Submitted: January 20, 2011
Decided: May 17, 2011

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 On June 7, 2010, the Supreme Court of the United States issued a per curiam order certifying to this Court a question of Montana law related to a petition for certiorari pending before the Supreme Court. *United States v. Juvenile Male*, 560 U.S. ____, 130 S. Ct. 2518 (2010). On June 23, 2010, we entered an order accepting the certified question pursuant to M. R. App. P. 15(7), based upon the statement of facts and procedural background provided by the Supreme Court. Following briefing by the parties, oral arguments were entertained January 19, 2011. We address the Supreme Court's question as posed:

> Is respondent's duty to remain registered as a sex offender under Montana law contingent upon the validity of the conditions of his now-expired federal juvenile-supervision order that required him to register as a sex offender, see Mont. Code Ann. §§46–23–502(6)(b), 41–5–1513(1)(c) (2005); *State v. Villanueva*, 328 Mont. 135, 138–140, 118 P. 3d 179, 181–182 (2005); see also §46–23–502(9)(b) (2009), or is the duty an independent requirement of Montana law that is unaffected by the validity or invalidity of the federal juvenile-supervision conditions, see §46–23–502(10) (2009); 2007 Mont. Laws ch. 483, §31, p. 2185?

¶2 Our answer to the certified question is that Respondent's state law duty to remain registered as a sex offender is not contingent upon the validity of the conditions of his federal supervision order, but is an independent requirement of Montana law.

¶3 In 2005, Respondent entered a "true" plea and was adjudged delinquent in the United States District Court for the District of Montana for knowingly engaging in sexual acts with a person under 12 years of age, which would have been a crime under 18 U.S.C. §§ 2241(c) and 1153(a) if committed by an adult. The District Court imposed official

3

detention for two years and supervision until Respondent reached the age of 21, upon conditions. Juveniles adjudicated delinquent for certain serious sex offenses are required to register under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 et seq., enacted by Congress in 2006. In February 2007, the Attorney General issued an interim rule, codified at 28 C.F.R. § 72.3 (2010), specifying that the requirement applied to offenders convicted of a requisite offense prior to the enactment of SORNA. 72 Fed. Reg. 8894, 8897 (Feb. 16, 2007). In July 2007, the District Court revoked Respondent's supervision for violating a condition, committing him to additional detention and imposing conditions requiring him to register as a sex offender and to keep his registration current. Respondent appealed the conditions, and the Ninth Circuit Court of Appeals vacated the registration requirement on federal *ex post facto* grounds. *United States v. Juvenile Male*, 590 F.3d 924 (9th Cir. 2010). The United States petitioned the Supreme Court for certiorari. Respondent's term of supervision expired in May 2008, and he is no longer subject to the registration condition of his sentence. In the certification order, the Supreme Court states that, before addressing the question of certiorari, "we must resolve a threshold issue of mootness" and determine "whether a favorable decision in this case would make it sufficiently likely that respondent could remove his name and identifying information from the Montana sex offender registry." *Juvenile Male,* 130 S. Ct. at 2519 (internal quotations and citation omitted). Thus, the Supreme Court has certified the question to "help determine whether this case presents a live case or controversy . . . ." *Juvenile Male*, 130 S. Ct. at 2520.

4

¶4 The Montana Sexual or Violent Offender Registration Act (SVORA or the Act) was enacted in 1989 and generally imposes a lifetime requirement, unless relieved by court order, upon sexual offenders to register with a law enforcement agency when present in Montana. Section 46-23-506(1), (3), MCA (2009);[1] *see generally* §§ 46-23-501 through -520, MCA. "Sexual offender" is generally defined as "a person who has been convicted of or, in youth court, found to have committed or been adjudicated for a sexual . . . offense." Section 46-23-502(10), MCA. "Sexual offense" is defined as a "violation of or attempt, solicitation or conspiracy to commit" any of a listing of Montana sexual offenses. Section 46-23-502(9)(a), MCA. A sexual offender who knowingly fails to register or keep registration current is subject to criminal penalties. Section 46-23-507, MCA.

¶5 From SVORA's enactment in 1989, sexual offenders convicted in other jurisdictions have been required to register for offenses that are "reasonably equivalent" to any of the listed Montana sexual offenses. *State v. Hamilton*, 2007 MT 167, ¶ 9, 338 Mont. 142, 164 P.3d 884; Laws of Montana, 1989, ch. 293, § 2, at 632; § 46-23-502(9)(b), MCA (defining "sexual offense" to include "any violation of a law of another state, a tribal government, or the federal government that is reasonably equivalent to a violation listed"). A 2001 amendment to SVORA retroactively applied the registration requirement to offenders who were sentenced, or placed under supervision, in another jurisdiction for a sexual offense since July 1, 1989. Laws of Montana, 2001, ch. 152, § 1,

---

[1] All references to SVORA are to the current 2009 version, unless otherwise indicated.

at 719; *State v. Villanueva*, 2005 MT 192, ¶ 15, 328 Mont. 135, 118 P.3d 179.  A 2005 amendment applied SVORA to offenders who were required to register as a sex offender after conviction in another jurisdiction.  Laws of Montana, 2005, ch. 313, § 1, at 1010; *Hamilton*, ¶ 9.  In 2007, the definition of "sexual offender" was revised to include a person who "in youth court" was "found to have committed or been adjudicated for" a sexual offense.  Laws of Montana, 2007, ch. 483, § 19, at 2174.[2]  Correspondingly, "sexual offense" was amended to include an "adjudication" for which registration was required in another jurisdiction.  Laws of Montana, 2007, ch. 483, § 19, at 2173-74 (defining "sexual offense" to include "any violation of a law of another state, a tribal government, or the federal government . . . after an adjudication or conviction" for which an offender is required to register).  The amendments incorporating juvenile proceedings within SVORA were explicitly made retroactive to offenders "who are sentenced or who are in the custody or under the supervision of the department of corrections on or after July 1, 1989 . . . ."  Laws of Montana, 2007, ch. 483, § 31(1), at 2185.

¶6      Noting that the term "sentenced" used within the retroactivity provision is defined in § 46-1-202(25), MCA, as "the judicial disposition of a criminal proceeding," and that youth proceedings are considered civil in nature, Respondent argues that "[t]he Montana Legislature never intended that the 2007 SVORA amendments were to be retroactively applied against juveniles."  Although acknowledging that *Villanueva* "seems to hold" that "the Montana Legislature always intended that the SVORA provisions would be applied

---

[2] The Laws of Montana indicate language added by amendments with the use of italics.  Italics have been omitted from all quotations herein, unless otherwise provided.

retroactively," Respondent argues there are distinctions between the retroactivity provisions of the 2001 SVORA amendments at issue in *Villanueva* and the 2007 SVORA amendments which compel a different outcome.

¶7     Whether legislation is applied retroactively is a question of legislative intent. *See Hamilton*, ¶ 10. There is a presumption against applying statutes retroactively, *Neel v. First Fed. Sav. & Loan Assoc. of Great Falls*, 207 Mont. 376, 386, 675 P.2d 96, 102 (1984), and § 1-2-109, MCA, provides that statutes are not retroactive unless expressly so declared by the Legislature. "Legislative intent that statutes be applied retroactively must be manifest in the statutes and from no other source." *Hamilton*, ¶ 10 (citing *Neel*, 207 Mont. at 386, 675 P.2d at 102). The controlling principle with regard to retroactivity of legislation has been stated as follows: If an act is "unmistakably 'intended to operate retrospectively, that intention is controlling as to the interpretation of the statute, *even though it is not expressly so stated.*'" *Hamilton*, ¶ 10 (emphasis added) (quoting *Neel*, 207 Mont. at 386, 675 P.2d at 102).

¶8     The defendant in *Hamilton* argued that the 2005 SVORA amendments were not retroactive. *Hamilton*, ¶ 10. In taking up the question, we noted that the Legislature had failed to provide an explicit statement of retroactivity for the 2005 amendments. *Hamilton*, ¶ 13. In order to determine whether the Legislature unmistakably intended the amendments to operate retroactively, we considered the purposes of SVORA, the purposes of the 2005 amendments, and the Legislature's previous efforts to make SVORA retroactive. *Hamilton*, ¶ 14. We reasoned that "[g]iven the Legislature's goal of

7

administrative efficiency, it is only logical that the Legislature intended the amendments to apply retroactively. If the amendments were applied only to offenses committed after October 1, 2005, the result would be administrative chaos rather than efficiency." *Hamilton*, ¶ 15. We thus concluded, despite the failure of the Legislature to provide a retroactivity provision, that "[c]learly . . . the Legislature intended the Act as a whole to be retroactive." *Hamilton*, ¶ 15. We reached a similarly reasoned conclusion in *Neel*, where we analyzed the homestead statute and concluded that "the legislative intent is unmistakable" that the statute was to be applied retroactively, "[d]espite the absence of an express declaration" of retroactivity. *Neel*, 207 Mont. at 387, 675 P.2d at 102.

¶9      The pertinent provisions of the retroactivity section of the bill containing the 2007 SVORA amendments state as follows:

> **Section 31.  Retroactive applicability.**  [Sections 2, 3, and 19 through 24] apply retroactively, within the meaning of 1-2-109, to:
>
> (1) sexual offenders who are sentenced or who are in the custody or under the supervision of the department of corrections on or after July 1, 1989 . . . .

Laws of Montana, 2007, ch. 483, § 31(1), at 2185 (brackets in original). This section makes retroactive Section 2 of the bill, which amended the Youth Court Act to exempt from the requirement to seal youth records information disseminated about an offender pursuant to SVORA. Laws of Montana, 2007, ch. 483, § 2, at 2155. It likewise makes retroactive Section 3 of the bill, which amended the Youth Court Act to authorize youth courts to impose registration when required by SVORA, and provided that "[t]he duration of registration for a youth who is required to register as a sexual or violent offender shall

8

be as provided in [SVORA]" unless the court would order, upon findings, exemption from or a lesser duration of registration. *See* Laws of Montana, 2007, ch. 483, § 3, at 2157-58. Also made retroactive was Section 19 of the bill, which amended SVORA by revising the definition of "sexual or violent offender" to include "a person who has been convicted of *or, in youth court, found to have committed or been adjudicated for* a sexual or violent offense." Laws of Montana, 2007, ch. 483, § 19, at 2174. This provision clearly included youth court offenders within the registration requirements of SVORA.

¶10    Thus, in addition to stating that Section 19—containing the youth registration requirement—was to be retroactive, the Legislature explicitly made retroactive the revisions to the Youth Court Act (Sections 2 and 3) it had enacted to correspond with the youth registration requirement. Laws of Montana, 2007, ch. 483, § 31, at 2185. Making retroactive the corresponding revisions to the Youth Court Act would have been completely useless and meaningless if the youth registration requirement had not also been made retroactive. "A presumption exists that the Legislature does not pass meaningless legislation; accordingly, this Court must harmonize statutes relating to the same subject, as much as possible, giving effect to each." *State v. Brown*, 2009 MT 452, ¶ 10, 354 Mont. 329, 223 P.3d 874. While it would have been preferable, and would have avoided any question, for the retroactivity provision to state that the amendments were made retroactive to those "sentenced or *adjudicated*" since July 1, 1989, the omission of this word does not disturb the clear and manifest intention of the Legislature to make the youth registration requirement retroactive. The structure and plain meaning

9

of the retroactivity provision clearly evidences this intent. As we have previously declared, "the Legislature intended the Act as a whole to be retroactive." *Hamilton*, ¶ 15. Respondent's argument that the Legislature "never intended" the 2007 amendments to be retroactively applied to juveniles is without merit. The amendments apply retroactively to a prior federal court adjudication of a juvenile sexual offender.[3]

¶11 Respondent argues that retroactive application of either the 2005 or 2007 SVORA amendments are *ex post facto* to him. In *State v. Mount*, 2003 MT 275, ¶ 37, 317 Mont. 481, 78 P.3d 829, we adopted the "intents-effects" test articulated by the United States Supreme Court in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140 (2003), and concluded that retroactive application of the 2001 version of SVORA did not violate the *ex post facto* clauses of the United States and Montana Constitutions. *Mount*, ¶¶ 89-90; *Hamilton*, ¶ 12. We rejected a similar challenge in *Hamilton*, concluding the 2005 SVORA amendments were not *ex post facto* based upon our conclusion in *Mount* that the registration requirement was regulatory, not punitive. *Hamilton*, ¶¶ 12, 17 (citing *Mount*, ¶¶ 89-90). We reach the same conclusion here.

---

[3] Respondent also argues that, notwithstanding our decision in *Hamilton* declaring the 2005 amendments retroactive, we should conclude that the 2005 SVORA amendments do not apply retroactively to Respondent because *Hamilton* did not specifically discuss the distinction between criminal and juvenile proceedings, and this Court did not apply SVORA to juveniles in *State v. Hastings*, 2007 MT 294, ¶ 15, 340 Mont. 1, 171 P.3d 726, because SVORA required a "conviction" whereas juvenile proceedings result in an "adjudication." *Hastings* involved an alleged failure to register arising under the 2003 version of SVORA, prior to the 2005 amendments and the 2007 amendments making SVORA applicable to juveniles, and therefore did not interpret the provisions at issue here or retroactivity. Our discussion above resolves this argument as well.

10

¶12    Given the applicable statutory provisions and the offense for which Respondent was adjudicated, the United States argues that SVORA imposes a registration requirement upon Respondent in multiple ways. We deem it necessary to analyze only one avenue by which an independent requirement is imposed, considering whether Respondent's federal violation is "reasonably equivalent" under § 46-23-502(9)(b), MCA, to the Montana offense of sexual assault on a child. Section 45-5-502(3), MCA (2001).

¶13    Respondent was adjudicated delinquent by the United States District Court for the District of Montana in 2005 for knowingly engaging in sexual acts prohibited by 18 U.S.C. §§ 1153(a) and 2241(c) (2000), between 2000 and 2002. Section 1153(a) criminalizes any violation of § 2241(c) which occurs within Indian country. *See* 18 U.S.C. § 1153(a) (2000). Section 2241(c) prohibits persons from "knowingly engag[ing] in a sexual act with another person who has not attained the age of 12 years . . . ." 18 U.S.C. § 2241(c) (2000).

¶14    Under the federal statute, a "sexual act" includes contact between genital areas, genital-oral contact, and penetration of genital openings or genital touching "not through the clothing" of children under 16 years old committed with "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(2) (2000). Under Montana law, sexual assault is committed when "[a] person . . . knowingly subjects another person to any sexual contact without consent . . . ." Section 45-5-502(1), MCA (2001). "Sexual contact" includes touching of the

11

genital parts of another "directly or through clothing, in order to knowingly or purposely: (a) cause bodily injury to or humiliate, harass, or degrade another; or (b) arouse or gratify the sexual response or desire of either party." Section 45-2-101(66)(a)-(b), MCA (2001). If the victim is less than 16 years old and the offender is 3 or more years older than the victim, the offender is subject to a heightened punishment, *see* § 45-5-502(3), MCA (2001), and is required to register under SVORA. *See* § 46-23-502(9)(a), MCA. Consent is ineffective if "the victim is less than 14 years old and the offender is 3 or more years older than the victim." Section 45-5-502(5)(b), MCA (2001). The parties do not dispute that Respondent's victim was less than 12 years of age and at least three years younger than Respondent.

¶15 While not identical, Respondent's federal offense clearly constitutes a "violation of a law of . . . the federal government that is reasonably equivalent" to the listed state offense of sexual assault on a child. Section 46-23-502(9)(b), MCA. Respondent is a "sexual offender" because he was "in youth court, found to have committed or been adjudicated for" such a sexual offense. Section 46-23-502(10), MCA. Thus, SVORA directly applies to Respondent, and he has a continuing duty to register under Montana law which is entirely independent from the registration conditions imposed by his federal supervision order.

¶16 Respondent raises several novel constitutional challenges to SVORA which we conclude are unnecessary to address in order to answer the certified question based upon

12

current Montana law. These issues will be considered if and when they are properly raised and developed within the context of cases litigated in Montana courts.


/S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS


District Court Judge Julie Macek, dissenting.

¶17 Respondent Juvenile Male had no independent requirement to register as a sexual offender under Montana law. Juvenile Male was adjudicated as a youth in Federal District Court in 2005, pursuant to the Federal Juvenile Delinquency Act. 18 U.S.C. §§ 5031 et seq. In 2006, after Juvenile Male had been adjudicated in federal court, Congress enacted the Sexual Offender Registration and Notification Act ("SORNA"). 42 U.S.C. §§ 16901 et seq. Although the majority correctly cites the history of the Montana Sexual or Violent Offender Registration Act ("SVORA") and the current statutory language of the Act, this was not the law at the time that Juvenile Male was adjudicated in federal court. At the time that Juvenile Male was adjudicated in federal court the only

persons subject to the SVORA in Montana were those defined as "sexual or violent offenders." Section 46-23-504, MCA (2005). "Sexual or violent offender" was then defined as "a person who has been convicted of a sexual or violent offense." Section 46-23-502(7), MCA (2005). A "sexual offense" was defined as (a) any violation of specified offenses under Title 45 of the Montana Criminal Code, or (b) "any violation of a law of another state or the federal government reasonably equivalent to a violation listed in subsection (6)(a)." Section 46-23-502(6), MCA (2005). Thus, at the time of Juvenile Male's adjudication in federal court, Montana's SVORA only required registration of persons "convicted" of a "sexual offense."

¶18    " 'Conviction' means a judgment or sentence entered upon a guilty or nolo contendere plea or upon a verdict or finding of guilty rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." Section 46-1-202(7), MCA.   In direct contrast to criminal proceedings for adults, the Montana Youth Court Act has created an entirely separate "court" to govern all proceedings for youths who are alleged to be delinquent. Sections 41-5-101, -103(8), -203, MCA.   If a youth is "adjudicated" to be delinquent then the youth faces "disposition" under the Youth Court Act.  Sections 41-5-1502, -1511, MCA.

> [N]o adjudication upon the status of any youth in the jurisdiction of the court shall operate to impose any of the civil disability imposed upon a person by reason of conviction of a criminal offense, **nor shall such adjudication be deemed a criminal conviction**, nor shall any youth be charged with or convicted of any crime in any court except as provided in this chapter.

Section 41-5-106, MCA (emphasis added).

14

¶19 This Court has previously addressed the issue of whether a youth court "adjudication" constituted a "conviction" pursuant to § 46-18-201(7), MCA (2005), and the SVORA. *State v. Hastings*, 2007 MT 294, ¶ 15, 340 Mont. 1, 171 P.3d 726. Hastings had been adjudicated in youth court in Montana as a delinquent youth for sexual intercourse without consent in 1998. *Hastings*, ¶ 4. After Hastings turned 18, the youth court transferred jurisdiction to the district court and placed him on adult supervision. *Id.* Later, that suspended sentence was revoked and the district court imposed a sexual offender registration requirement upon Hastings. *Id.* In 2005, Hastings was arrested and charged by Information with the offense of failure to register as a sexual offender and filed a motion to dismiss, which was denied. *Hastings*, ¶ 5. The *Hastings* Court held that:

> Section 46-18-201(7), MCA, and the SVORA statutes require a "conviction" before SVORA registration requirements may be imposed. **The statutes are unambiguous in that regard. Thus, because it is undisputed that Hastings' youth court adjudication did not constitute a "conviction" as contemplated in § 46-23-502(7), MCA, the SVORA registration requirements could not be imposed** by a district court under those statutes.

*Hastings*, ¶ 15 (emphasis added).

¶20 The Court noted, "the problem, of course, is that unless Montana statutes permit the imposition of a SVORA registration requirement, a court may not impose one." *Hastings*, ¶ 19.

¶21 Thus, under Montana law in effect at the time, had Juvenile Male, like Hastings, been adjudicated under Montana's Youth Court Act he would not have been "convicted"

and would not have been subjected to SVORA. Additionally, even if this Court were to apply federal law, the Federal Juvenile Delinquency Act also creates a distinct process of justice for youths and likewise adjudicates delinquency and imposes judgment as a "disposition" and does not "sentence" youths in youth court proceedings. *See* 18 U.S.C. §§ 5031 et seq. Thus, even though Juvenile Male was adjudicated in federal court for an offense that meets the definition under Montana law of a "sexual offense" under § 46-23-502(6)(b), MCA (2005), he had no requirement to register as a sexual offender in Montana unless he had also been **"convicted"** of that "sexual offense" under federal law. He was not convicted. The federal judge specifically held that Juvenile Male was adjudicated a delinquent youth and that "disposition is made under 18 U.S.C. § 5037."

¶22 There is no question that Juvenile Male's "adjudication" in federal youth court did not constitute a "conviction" for a "sexual or violent offense" under either federal or Montana law. Thus, at the time that he was adjudicated as a delinquent youth in federal court, Juvenile Male had no independent obligation to register as a "sexual offender" under Montana law. Accordingly, had the Montana Legislature amended the registration requirement to include Juvenile Male within the definition of those required to register *and* further impose the amended definition retroactively, that is the only way in which Juvenile Male would subsequently be required to register.

¶23 The majority concedes that it was not until 2007 that the Montana Legislature expanded the definition of "sexual offender" to specifically include a person who "in youth court" was "found to have committed or been adjudicated for" a sexual offense.

16

Laws of Montana, 2007, ch. 483, § 19, at 2174. "Sexual offense" was likewise amended to include "any violation of a law of another state, a tribal government, or the federal government . . . after an adjudication or conviction" for which the offender is required to register. Laws of Montana, 2007, ch. 483, § 19, at 2173-74. These 2007 amendments made SVORA applicable to adjudicated youths for the first time in Montana.

¶24 These amendments were made retroactive to specific sexual offenders "who are **sentenced** or who are in the custody or under the supervision of the department of corrections on or after July 1, 1989." Laws of Montana, 2007, ch. 483 § 31(1), at 2185 (emphasis added). Although the majority opines that the Legislature *intended* the 2007 amendments imposing registration upon juvenile offenders to apply retroactively to dispositions on or after July 1, 1989, the Legislature did not in fact do so. The fact that the Legislature may have made other Youth Court Act provisions regarding sexual offenses retroactive is not dispositive. "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." Section 1-2-109, MCA.

¶25 This Court has previously considered this very issue in determining whether the district court erred when it "reflected the Montana Legislature's intent to extend the scope of SVORA to adjudicated youths" and held:

> [I]f [a statute's language] is clear and unambiguous, no further interpretation is required. . . . In construing statutes, the function of the court is simply to ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted or to omit what has been inserted . . . we conclude the District Court erred in construing the statutes at issue here by looking beyond their plain, unambiguous language.

*Hastings*, ¶¶ 14, 18.

17

¶26 Thus, the majority likewise cannot attempt to construe the Legislature's intent by looking beyond their plain, unambiguous language. The clear and unambiguous language used in the retroactive provision for the 2007 amendments specifically limits its application to those "who are sentenced" after July 1, 1989.

¶27 The term "sentenced" has been specifically defined under that portion of the criminal procedure code that deals with adults charged with crimes. The definition is not ambiguous or subject to interpretation. Section 46-1-202(25), MCA, defines "sentence" as "the judicial disposition of a *criminal proceeding* upon a plea of guilty or nolo contendere or upon a verdict or finding of guilty." (Emphasis added.) Section 46-1-103, MCA, provides that the scope of the criminal procedure title "governs the practice and procedure in all *criminal proceedings* in courts of Montana." (Emphasis added.) Youth Court is not a criminal proceeding, and no youth is ever "sentenced" in Youth Court. Section 41-5-106, MCA.

¶28 This Court's prior and continued willingness to equate an adult "sentence" with a youth court "disposition" disregards the inherently clear and unambiguous statutory and public policy differences between youth and adult court.

¶29 "Unless Montana statutes permit the imposition of a SVORA registration requirement, the court may not impose one." *Hastings*, ¶ 18. There is no question that Juvenile Male was not in the custody or under the supervision of the Department of Corrections, thus the only method for the amendments to apply retroactively to him is if he was "sentenced" on or after July 1, 1989. Juvenile Male was not "sentenced" either in

18

accordance with the Federal Juvenile Delinquency Act or Montana law and therefore is not subject to retroactive application of the 2007 registration requirements for adjudicated youths. Thus, I would hold that Juvenile Male has no independent obligation to register as a sexual offender under Montana law.


/S/ JULIE MACEK
Hon. Julie Macek, District Court Judge,
sitting for Justice Patricia O. Cotter


Justice James C. Nelson joins the foregoing dissent.


/S/ JAMES C. NELSON


Justice James C. Nelson, dissenting.

¶30 I join Judge Macek's well-reasoned Dissent and add the following observations regarding our approach to retroactivity analysis.

¶31 Like Judge Macek, I cannot agree that we may ignore plain and unambiguous statutory language by superimposing on that language our contrary view of what the Legislature presumably "intended" but did not actually say. We dealt with a situation not

19

unlike that here—i.e., one in which the Legislature's presumed "intent" was not incorporated into the statutory language actually adopted and enacted by that body—in *State v. Goebel*, 2001 MT 73, 305 Mont. 53, 31 P.3d 335. In that case, the Legislature made what appeared to be a "drafting error" in § 46-23-1012, MCA. *Goebel*, ¶ 23. Notwithstanding, and in the face of the State's arguments that the Legislature's presumed "intent" should control over the language it actually adopted, this Court, unanimously, adhered to the rule of statutory construction that "there is no reason for us to engage in a discussion of the legislative history to construe [a] statute when we have determined that the language of the statute is clear and unambiguous on its face." *Goebel*, ¶ 21 (citing *State v. Hubbard*, 200 Mont. 106, 111, 649 P.2d 1331, 1333 (1982)); *accord Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (citations and internal quotation marks omitted)). Furthermore, we adhered to this rule despite the fact that the District Court's contrary interpretation of the statute was "a common sense interpretation of a statute that, itself, is illogical." *Goebel*, ¶ 22. We closed with the following:

> Nonetheless, to the extent that there is an error and to the extent that the statute does not accurately reflect the Legislature's clearly expressed intention, it is appropriate that the Legislature correct the problem, not the courts. *See Ingraham v. Champion Intern.* (1990), 243 Mont. 42, 49, 793

20

P.2d 769, 773 (citing *State, Dept. of Hwys. v. Public Employees Craft Coun.* (1974), 165 Mont. 349, 529 P.2d 785; *State ex rel. Grant v. Eaton* (1943), 114 Mont. 199, 133 P.2d 588).

*Goebel*, ¶ 23.

¶32 In the case before us, we should simply follow our rules of statutory construction and our precedent. As Judge Macek states, we should apply the plain language of the statute rather than inferring a presumed legislative intent that was not incorporated into the actual language the Legislature adopted.

¶33 That said, while I disagree with the Court's approach here of inferring what the Legislature presumably intended but did not actually say, I recognize that this approach finds support in some of our cases. In my view, however, those cases should be rejected to the extent they have created a watered-down standard for retroactivity analysis. The standard is set by statute, not caselaw, and it is plain, simple, and clear: "No law contained in any of the statutes of Montana is retroactive unless *expressly so declared.*" Section 1-2-109, MCA (emphasis added). To "declare" is "to make known formally, officially, or explicitly." *Merriam-Webster's Collegiate Dictionary* 299 (10th ed., Merriam-Webster 1997). "Expressly" means "in an express manner," i.e., "directly, firmly, and explicitly stated." *Id.* at 410. To be "explicit" means "fully revealed or expressed *without vagueness, implication, or ambiguity.*" *Id.* at 409 (emphasis added). Accordingly, unless the Legislature makes known formally, officially, or explicitly, in a manner that is direct, firm, and explicit, *without vagueness, implication, or ambiguity,* that a statute is retroactive, then the statute is, by default, *not* retroactive.

21

¶34 The Court acknowledges the language of § 1-2-109, MCA (Opinion, ¶ 7) but then invokes other, more vague and malleable standards—requiring less than an "express declaration"—for its analysis. For instance, the Court cites *State v. Hamilton*, 2007 MT 167, ¶ 10, 338 Mont. 142, 164 P.3d 884, where we said: "Legislative intent that statutes be applied retroactively must be manifest in the statutes . . . ." The manifest problem with this statement, however, is that "manifest" simply means "readily perceived by the senses." *Merriam-Webster's Collegiate Dictionary* 707. Obviously, using our senses together with our powers of deduction, inference, and reason, we may "readily perceive" something to be the case even though it is not "expressly so declared." Correspondingly, asking whether the Legislature's intent is "manifest" in the statute allows the Court to do what it has done here: base its decision not on an "express declaration" of retroactivity— which § 1-2-109, MCA, specifically requires—but rather on what we "readily perceive" using inference and deduction, as well as a healthy dose of conjecture.

¶35 In support of this deviation from the unambiguous directive of § 1-2-109, MCA, the *Hamilton* Court cited *Neel v. First Fed. Sav. and Loan Assn.*, 207 Mont. 376, 386, 675 P.2d 96, 102 (1984), where this Court stated:

> For a statute to be retroactively applied, such an intent must be clearly expressed by the legislature. Section 1-2-209 [sic], MCA. The legislative intent must be gathered from the act itself and no other source. *Penrod v. Hoskinson* (1976), 170 Mont. 277, 552 P.2d 325. However, "If it is unmistakable that an act was intended to operate retrospectively, that intention is controlling as to the interpretation of the statute, even though it is not expressly so stated." *Davidson v. Love* (1953), 127 Mont. 366 at 370, 264 P.2d 705 at 707.

22

The first and third of these statements are patently—not to mention manifestly—contrary to § 1-2-109, MCA. Again, the statute requires (and has always required, since its inception in 1895) an "express declaration" of retroactivity. The question is not whether we think the intent is "clearly expressed"—however that might be accomplished. Retroactivity must be "expressly so declared." Nor is the question whether we think the intent is "unmistakable."[1] The requirement, once more, is "expressly so declared."

¶36 If the retroactivity of a statute depends on whether the Legislature has "expressly declared" it to be so—and that, in fact, is the requirement under § 1-2-109, MCA—then we should not be engaging in subjective analyses of what we think is "manifest," "clear," "unmistakable," or "logical"[2]—though not "expressly declared"—in the legislation. The only manifest, clear, and unmistakable thing we need to know is this: "No law contained in any of the statutes of Montana is retroactive unless *expressly so declared*." Section 1-2-109, MCA (emphasis added). That is the exacting standard the Legislature itself has adopted for determining retroactivity. That is the exacting standard the Legislature requires of itself if it intends for legislation to be retroactive. Unquestionably, it is a simple matter for the Legislature to expressly declare that a statutory amendment is retroactive, if that is what the Legislature intends.

---

[1] The "unmistakable" standard originated in secondary authority, not the actual language of Montana's retroactivity statute. *See Davidson*, 127 Mont. at 370, 264 P.2d at 707 (citing 50 Am. Jur. *Statutes* § 479).

[2] *See* Opinion, ¶ 8 (" '[I]t is only logical that the Legislature intended the amendments to apply retroactively.' " (quoting *Hamilton*, ¶ 15)).

23

¶37 Using inference and deduction, the Court argues that it would have been "useless" and "meaningless" to make certain parts of the Youth Court Act retroactive without also making the youth registration requirement retroactive as well. Opinion, ¶ 10. My disagreement with the Court is not with this inference. It is, rather, with the fact that the Court is drawing such inferences in the first place. The Court states that it would have been "preferable, and would have avoided any question," if the Legislature had actually stated that the youth registration requirement is retroactive. Opinion, ¶ 10. With all respect, however, § 1-2-109, MCA, does not make an "express declaration" of retroactivity optional or "preferable." To the contrary, an "express declaration"—which would avoid the sort of uncertainty and "question" that obviously exists here—is precisely what the statute specifically, expressly, and plainly requires. I respectfully suggest, therefore, that we are flat wrong to engage in the sort of inference and deduction the Court does here in order to remedy a perceived illogicality.

¶38 Unlike other interpretational endeavors, where we must avoid absurdities[3] and may look behind the language used in order to resolve ambiguities,[4] retroactivity analysis is strictly limited to one question, and one question only: Did the Legislature "expressly declare" the statute to be retroactive? This question must be resolved on the face of the statutory language. Either there is an express declaration, or there isn't. It is wrong for

---

[3] *In re Marriage of McMichael*, 2006 MT 237, ¶ 14, 333 Mont. 517, 143 P.3d 439 ("We interpret a statute to give effect to its purpose and to avoid absurd results.").

[4] *State v. Johnston*, 2008 MT 318, ¶ 26, 346 Mont. 93, 193 P.3d 925 ("We resolve ambiguous terms [in a statute] . . . by looking to the structure, purpose and/or legislative history of a statute to determine the intent of the Legislature."), *overruled in part on other grounds*, *State v. Maynard*, 2010 MT 115, ¶¶ 21, 28, 356 Mont. 333, 233 P.3d 331.

the courts to go beyond this question and do more than § 1-2-109, MCA, tells us to do. The requirement of an express declaration is not merely "preferable"; it is *mandatory*. If it seems "illogical" that a certain provision was not made retroactive, or if the lack of retroactivity would leave other legislation seemingly "useless and meaningless," then it remains the prerogative of *the Legislature*, not the courts, to address these presumed flaws and provide the "express declaration" of retroactivity which the Legislature itself has said it will provide when it intends for legislation to apply retroactively. Section 1-2-109, MCA.

¶39   Hence, while the Court's approach might be appropriate if we were faced with an ambiguity in a run-of-the-mill case of statutory construction, I conclude that it is not appropriate for resolving the retroactivity question here. We should not be foraging about in the Laws of Montana trying to divine what the Legislature may have intended but did not expressly declare. We likewise should not be inferring intent from what may seem to us "unmistakable" or "logical." Rather, we should simply apply the rule that the Legislature itself adopted and ask the one question that the Legislature has directed us to ask: Did the Legislature "expressly declare" that the law in question is retroactive? *Davidson*, *Neel*, and their progeny are wrong and should be overruled, not perpetuated.

¶40   The Court concedes that the Legislature did not "expressly declare" the youth registration requirement to be retroactive. Opinion, ¶ 10 ("[I]t would have been preferable, and would have avoided any question, for the retroactivity provision to state that the amendments were made retroactive to those 'sentenced or *adjudicated*' since July

25

1, 1989 . . . ." (emphasis in original)). And Judge Macek ably demonstrates this to be the case. Dissent, ¶¶ 17-29. Pursuant to § 1-2-109, MCA, therefore, this should be the end of our analysis. Juvenile Male had no independent requirement to register as a sexual offender.

¶41 I dissent.

/S/ JAMES C. NELSON

District Court Judge Julie Macek, sitting for Justice Patricia O. Cotter, joins the Dissent of Justice James C. Nelson.

/S/ JULIE MACEK